114PCI-736 (FJS/GL/zm)

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE EXPRESS INSURANCE COMPANY | ) ) ) | |
| | ) | Case No.: |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HARRY'S TRUCK SERVICE, LLC, | ) | |
| RENY RAMIREZ ORTS, PENSKE TRUCK | ) | Complaint and Jury Demand |
| LEASING CO., LP, MARVIN WHITE, Deceased, | ) | |
| NATCOLE POWELL, MICHELLE D. GREEN, | ) | |
| HAROON ZAHID, GHULAM HUSSAIN, | ) | |
| MICHIGAN FARM BUREAU INSURANCE | ) | |
| COMPANY, NANDA Y. TE, LILIANA | ) | |
| MONDES DE OCA SUAREZ, MATTHEW M. | ) | |
| QUEROL,  GEICO CASUALTY COMPANY | ) | |
| and  J.B. HUNT TRANSPORTATION | ) | |
| SERVICES, INC. | ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, PROGRESSIVE EXPRESS INSURANCE COMPANY ("Progressive") by and through its undersigned counsel of record, SUDEKUM, CASSIDY & SHULRUFF, CHTD., and for its Complaint for Declaratory Judgment against Defendants states as follows:

### INTRODUCTION

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 and Rule 57 of the Rules of Federal Civil Procedure. This action arises from a seven-car motor vehicle collision occurring on Sunday, October 10, 2021, at approximately 11:17 p.m. on Interstate 90 (aka the Kennedy Expressway) near the intersection with N. Natoma Avenue in Chicago, Cook County, Illinois ("the collision"). The collision resulted in several injuries and one death. For the reasons set forth below, there is an actual controversy between the parties, and the Progressive

Express Insurance Company ("Progressive") seeks a declaration it does not owe insurance coverage because of the collision.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question concerning the application of a MCS-90 Endorsement which Progressive issued to Harry's Truck Services, LLC pursuant to the Motor Carrier Act of 1980. 49 U.S.C. §§ 301-327 (Suppl. 3 1934). Furthermore, this Court also has jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and Defendants are residents of different states and the amount at stake is more than $75,000.

## PARTIES

3.      The Progressive Express Insurance Company ("Progressive") is an Ohio corporation licensed to issue policies of insurance in various states including Florida, and has its principle place of business in Ohio.

4.      Harrys Truck Services, LLC ("Harry's") is a Florida limited liability corporation engaged in "last mile delivery" of household goods with its principle place of business in Florida.

5.      On information and belief, Reny Ramirez Orts ("Orts") is a resident of the State of Florida. At the time of the collision, Orts was the driver of a 2016 Freightliner box truck ("the 2016 Freightliner") that Harry's rented from Penske Truck Leasing Co., LP and that was involved in the collision.

6.      Penske Truck Leasing Co., LP ("Penske") is a limited partnership organization with its principle place of business in the State of Pennsylvania.

7.      On information and belief, Marvin White, deceased, ("White") was a resident of the State of Illinois who was the driver of a 2012 BMW X5 involved in the collision and who passed on because of injuries he sustained as a result of the collision.

8.      On information and belief, Natcole Powell ("Powell") was a resident of the State of Illinois and the driver of a 2013 Hyundai Sonata who was involved in and sustained injuries as a result of the collision.

9.      On information and belief, Michelle D. Green ("Green") was a resident of the State of Illinois and a passenger in the 2013 Hyundai Sonata driven by Powell who was involved in and sustained injuries as a result of the collision.

10.      On information and belief, Haroon Zahid ("Zahid") was a resident of the State of Michigan and the driver of a 2007 Toyota Highlander who was involved in and sustained injuries as a result of the collision.

11.      On information and belief, Ghulam Hussain ("Hussain") was a resident of the State of Michigan and a passenger in the 2007 Toyota Highlander driven by Zahid who was involved in and sustained injuries as a result of the collision.

12.      On information and belief, the Michigan Farm Bureau Insurance Company is an insurance company organized under the laws of the State of Michigan which insured and paid Zahid for damages which Zahid sustained as a result of the collision and which thereby has rights of subrogation.

13.      On information and belief, Nanda Y. Te ("Te") was a resident of the State of Illinois and the driver of a 2014 Mercedes-M E350 who was involved in and sustained injuries as a result of the collision.

14.     On information and belief, Liliana Montes de Oca Suarez ("Suarez") was a resident of the State of Illinois and the driver of a 2017 Chevrolet Cruz who was involved in and sustained injuries as a result of the collision.

15.     On information and belief, Matthew M. Querol ("Querol") was a resident of the State of Illinois and the driver of a 2017 Subaru Imprerza who was involved in and sustained injuries as a result of the collision.

16.     On information and belief, the Geico Casualty Company, was an insurance company organized under the laws of the State of Maryland which insured and paid Matthew M. Querol for injuries sustained in the collision and which thereby has rights of subrogation.

17.     J.B Transportation Services, Inc. ("JB Hunt") is named as an additional insured pursuant to Progressive Form 1198. On information and belief, JB Hunt is an Arkansas corporation with its principle place of business in Lowell, Arkansas.

## FACTS COMMON TO ALL COUNTS

18.     At all times relevant, Harry's was engaged in the delivery of household goods in interstate commerce.

19.     At all times relevant, Harry's had a Florida Commercial Auto policy with Progressive bearing policy number 02481600-1 ("the Progressive Policy"). A copy of the Progressive Policy is attached as **Exhibit A**.

20.     The Progressive Policy affords liability coverage to Harry's pursuant to the terms and conditions set forth in the policy.

21.     The Declarations page of the Progressive Policy in effect at the time of the collision lists three covered vehicles: a 2016 International 430; a 2016 Freightliner 16M; and a 2013 Freightliner 16M (Page 2 of 3 of the September 2, 2021 Declarations Page of the Progressive Policy, incorporated hereto in Exhibit A.)

22.     The 2016 Freightliner involved in the collision is not listed on the declarations page of the Progressive Policy.

23.     Harry's never used any of the covered vehicles in the operation of its business in the Chicago area.

24.     On October 8, 2021, Harry's rented the 2016 Freightliner from Penske. A copy of the Rental Agreement is attached as **Exhibit B**.

25.     As part of the rental transaction Harry's secured from or through Penske a policy of insurance specifically covering the 2016 Freightliner. This coverage is reflected on the Rental Agreement attached as Exhibit B.

26.     Harry's did not notify Progressive that Harry's was using the 2016 Freightliner in Harry's business.

27.     Harry's used the 2016 Freightliner in Harry's business to deliver household goods in the Chicago area.

28.     Prior to October 10, 2021, Harry engaged Orts to be a driver of the 2016 Freightliner which Harry's leased from Penske for purposes of making deliveries of household goods in the area in and around Chicago, Illinois.

29.     On Sunday, October 10, 2021, at approximately 11:17 p.m. Orts was involved in the collision while driving the 2016 Freightliner.

30.     Six other vehicles were involved in the collision including those operated by: White; Powell; Zahid; Te; Suarez and Querol.

31.     All seven of the vehicles involved in the collision sustained damage.

32.     Several of the drivers and passengers inside of the seven vehicles involved in the collision sustained personal injuries.

33.     Mr. White died as a result of personal injuries sustained in the collision.

34.     At the time of the collision Orts was not engaged in making a delivery or pick-up as part of Orts' employment with Harry's. Rather, at the time of the collision, Orts was driving from the home of a friend where Orts had been socializing to the local hotel where Orts slept while in Chicago working for Harry's.

**CAUSES OF ACTION**

**I.   The MCS-90 does not apply.**

35.     Progressive repeats and re-alleges the foregoing ¶¶ 1 to 34.

36.     The Progressive Policy includes a MCS-90 Endorsement with a stated limit of liability of $750,000.00. (See Page 103 of Exhibit A).

37.     The MCS-90 Endorsement does not apply to the collision that is the subject of this lawsuit because at the time of the collision the 2016 Freightliner was not being used in interstate commerce. Rather, at the time of the collision, the 2016 Freightliner was being used by Orts as a means of transporting himself from a night of socializing at the home of a friend to the local hotel where Orts slept while working for Harry's in the Chicago area.

38.     Because the MCS-90 Endorsement does not apply to the collision Progressive is not required to pay, within, the limits described on the MCS-90 Endorsement, i.e. $750,000, any final judgment recovered against the Progressive insured, Harry's, for public liability resulting from the negligent operation, maintenance or use of the 2016 Freightliner.

WHEREFORE, the Progressive Express Insurance Company seeks a declaration pursuant to 28 U.S.C. §2201 and Rule 57 of the Rules of Federal Civil Procedure that the MCS-90 Endorsement does not apply and the Progressive Express Insurance Company is not required to pay any final judgment recovered against Harry's Truck Services, LLC on account of the collision and for such other relief this Court deems just and appropriate.

**II.  The 2016 Freightliner is not an "insured auto."**

39.    Progressive repeats and re-alleges the foregoing ¶¶ 1 to 34.

40.    The Progressive Policy provides, in pertinent part, as follows:

<div align="center">

**GENERAL DEFINITIONS**

\*\*\*

</div>

2.   "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:

a.   equipment designed and used primarily for:
(i)   snow removal;
(ii)  road maintenance, but not construction or resurfacing;
(iii) street cleaning;

b.   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.   air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

<div align="center">

\*\*\*

</div>

4.   "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto**.

<div align="center">

\*\*\*

</div>

6.   "**Insured auto**" or "**your insured auto**" means:

a.   Any **auto** specifically described on the **declarations page**; or

b.   An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
(i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;
(ii)  **we** insure all **autos** owned by **you** that are used in **your** business;
(iii) no other insurance policy provides coverage for that **auto**; and
(iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

(ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

\*\*\*

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

41. The 2016 Freightliner involved in the collision is not an insured auto because:

a. Harry's did not acquire possession of the 2016 Freightliner during the policy period, i.e. August 10, 2021 to August 10, 2022;

b. The 2016 Freightliner was not specifically described on the Declarations Page of the Progressive Policy at the time of the collision;

c. Harry's was not the owner of the 2016 Freightliner;

d. There was other insurance covering the 2016 Freightliner; and

    e.     Harry's did not notify Progressive within 30 days after Harry's acquired possession of the 2016 Freightliner that Harry's wanted Progressive to provide insurance coverage for the 2016 Freightliner.

42. Because the 2016 Freightliner is not an insured auto, Progressive does not owe a duty to either defend or indemnify Harry's as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision including but not limited to Orts, Penske, White, Powell, Green, Zahid, Hussain, Te, Suarez, Michigan Farm Bureau, Geico and Querol.

WHEREFORE, the Progressive Express Insurance Company seeks a declaration pursuant to 28 U.S.C. §2201 and Rule 57 of the Rules of Federal Civil Procedure that the 2016 Freightliner is not an insured auto as that term is used in the policy that the Progressive Express Insurance Company issued to Harry's Truck Services, LLC and for such other relief this court deems just and appropriate.

### III.   The 2016 Freightliner is not a "temporary substitute."

43. Progressive repeats and re-alleges the foregoing ¶¶ 1 to 34.

44. Progressive Policy also provides, in pertinent part, as follows:

### GENERAL DEFINITIONS

***

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

45. The 2016 Freightliner involved in the collision is not a "temporary substitute auto" because the 2016 Freightliner was not a temporary substitute for an insured auto that was withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

46.     Because the 2016 Freightliner is not a temporary substitute auto, Progressive does not owe a duty to either defend or indemnify Harry's as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision including but not limited to Orts, Penske, White, Powell, Green, Zahid, Hussain, Te, Suarez, Michigan Farm Bureau, Geico and Querol.

WHEREFORE the Progressive Express Insurance Company seeks a declaration pursuant to 28 U.S.C. §2201 and Rule 57 of the Rules of Federal Civil Procedure that the 2016 Freightliner is not a temporary substitute auto as that term is used in the policy that the Progressive Express Insurance Company issued to Harry's Truck Services, LLC and for such other relief this court deems just and appropriate.

## IV.  JB Hunt is not entitled to coverage as an additional insured.

47.     Progressive repeats and re-alleges the foregoing ¶¶ 1 to 34.

48.     Progressive Form 1198 (01/04), Additional Insured Endorsement, provides, in pertinent part:

J.B. Hunt Transportation
PO Box 598
Lowell, AZ 72745

The person or organization named above is an insured with respect to such liability coverage as is afforded by the policy but this insurance applies to said insured only as a person liable for the conduct of another insured and then only to the extent of that liability. We also agree with you that insurance provided by this endorsement will be primary for any power unit specifically described on the Declarations Page.

Limit of Liability
Bodily Injury                                    Not applicable
Property Damage                                  Not applicable
Combined Liability                               $1,000,000 each accident.

**All other terms, limits and provisions of this policy remain unchanged.**
(Emphasis in the original.)

49.    The Progressive policy affords coverage to J.B. Hunt only to the extent of J.B. Hunt's liability as a result of the conduct of Harry's Trucking Services, LLC.

50.    Because the 2016 Freightliner is not an insured auto, Progressive does not owe a duties to either defend or indemnify JB Hunt as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision including but not limited to Orts, Penske, White, Powell, Green, Zahid, Michigan Farm Bureau, and Querol.

51.    Because the 2016 Freightliner is not a temporary substitute auto, Progressive does not owe a duty to either defend or indemnify JB Hunt as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision including but not limited to Orts, Penske, White, Powell, Green, Zahid, Michigan Farm Bureau, and Querol.

52.    Even if the 2016 Freightliner was either an insured auto or a temporary substitute auto, which Progressive specifically denies, since the 2016 Freightliner involved in the collision was not "specifically described on the Declarations Page," then the Progressive policy does not afford primary coverage to JB Hunt. Rather, the Progressive policy would be excess to any insurance that affords coverage to JB Hunt.

WHEREFORE, the Progressive Express Insurance Company seeks a declaration pursuant to 28 U.S.C. §2201 and Rule 57 of the Rules of Federal Civil Procedure that JB Hunt is not entitled to coverage as an additional insured and for such other relief this Court deems just and appropriate.

Respectfully Submitted,

SUDEKUM, CASSIDY & SHULRUFF, CHTD.

By: /s/ Frederick J. Sudekum, III
         Attorneys for Defendant.

Frederick J. Sudekum, III (fjs@scslegal.com)
Gina L. Leahy (gl@scslegal.com)
SUDEKUM, CASSIDY & SHULRUFF, CHTD.
20 North Clark Street, Suite 2450
Chicago, Illinois 60602
Phone:  (312) 803-6250
Firm ID:  38809

# Exhibit A

GREAT FLORIDA INS
11362 S ORANGE BLOSSO
ORLANDO, FL 32837

**PROGRESSIVE**
*COMMERCIAL*

Named insured

HARRY'S TRUCK SERVICES
LLC
201 BELVOIR DR
DAVENPORT, FL 33837

**Policy number:  02481600-1**

Underwritten by:
Progressive Express Ins Company
September 2, 2021
Policy Period: Aug 10, 2021 - Aug 10, 2022
Page 1 of 3

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, print policy documents, or check the status of a claim.

**1-407-270-8220**
**GREAT FLORIDA INS**
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is unavailable or to report a claim.

# Commercial Auto Insurance Coverage Summary
## This is your Declarations Page
## Your policy information has changed

Your coverage began on August 10, 2021 at 12:01 a.m.  This policy expires on August 10, 2022 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 1652FL (02/19), Z434FL (02/19), 1890 (02/19), MCS90 (99/99), 1303FL (04/08), 1198 (01/04), 4852FL (02/19), 4881FL (02/19) and Z228 (01/11).

The named insured organization type is a corporation.

## Policy changes effective September 1, 2021

| | |
|---|---|
| Premium change: | -$42,128.00 |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

### Auto coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $49,056 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Employer Non-Owned Auto Liability To Others | | | 207 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | Rejected | | -- |
| Basic Personal Injury Protection | | | 534 |
| Without Work Comp-Named Insured Only | $10,000 each person | $0 | |
| **Subtotal policy premium** | | | **$49,797** |

### Motor Truck Cargo coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $2,500 | $4,941 |
| **Subtotal policy premium** | | | **$4,941** |
| Fees | | | 20 |
| **Total 12 month policy premium and fees** | | | **$54,758** |

Number of Employees:  (0-10)


Continued

Form 6489 FL (01/15)

Policy number: 02481600-1
HARRY'S TRUCK SERVICES
Page 2 of 3

## Rated driver

Additional information

1. RAYMOND RODRIGUEZ
2. HARRY POLANCO
3. SIMON PERALTA
4. REYNALDO SANTOS          excluded driver

## Rated commodities

1. OTHER MISC.

## Auto coverage schedule

1. **2007 Intl 430**
   VIN: 1HTMMAAL67H530847          Garaging Zip Code: 33837          Radius: N/A

| Liability<br>Premium | Liability | PIP | Auto Total |
|---|---|---|---|
| | $14,728 | $178 | **$14,906** |

2. **2012 Frht 16M**
   VIN: 1FVACWDT1CDBU4535          Garaging Zip Code: 33837          Radius: N/A

| Liability<br>Premium | Liability | PIP | Auto Total |
|---|---|---|---|
| | $16,969 | $178 | **$17,147** |

3. **2013 Frht 16M**
   VIN: 3ALACWDT7DDFE2439          Garaging Zip Code: 33837          Radius: N/A

| Liability<br>Premium | Liability | PIP | Auto Total |
|---|---|---|---|
| | $17,359 | $178 | **$17,537** |

## Premium discounts

| Policy | |
|---|---|
| 02481600-1 | Business Experience, CDL Experience and Package |
| Vehicle | |
| 2007 Intl 430 | Air Bag and Anti-Lock Brakes |
| 2012 Frht 16M | Air Bag and Anti-Lock Brakes |
| 2013 Frht 16M | Air Bag and Anti-Lock Brakes |

## Additional Insured information

1. Additional Insured          J.B HUNT TRANSPORT
                               PO BOX 598 LOWELL, AZ 72745


Continued

**Agent signature**

*Mark Paul*

**Company officers**

*Patricia M. Corwin*

Secretary

1781 FL 0219

# FLORIDA
## COMMERCIAL AUTO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
**Provisions of this Agreement and its endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions, and your rights and duties.**

**All forms in the endorsement section do not automatically pertain to your policy.**
**Please refer to your declarations page for form numbers associated with your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.**

**This booklet contains Form 6912 (02/19) and a section of optional endorsements.**



004

Form 6912 (02/19)

# COMMERCIAL AUTO POLICY

---

## INDEX OF POLICY PROVISIONS

**PAGE**

**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**. . . . . . . . . . . . . . . . . . .1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**PART I—LIABILITY TO OTHERS**
   Insuring Agreement—Liability To Others . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
   Additional Definitions Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .6
   Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
   Out-Of-State Coverage Extension. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**PART II—DAMAGE TO YOUR AUTO**
   Insuring Agreement—Collision Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . .15
   Insuring Agreement—Comprehensive Coverage . . . . . . . . . . . . . . . . . . . . . .15
   Insuring Agreement—Fire and Theft with Combined
     Additional Coverage (CAC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
   Additional Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
   Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
   Additional Definition Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .17
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
   Deductible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
   Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
   No Benefit to Bailee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
   Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
   Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
   Loss Payee Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**GENERAL PROVISIONS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

006

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

### **DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

<div align="center">1</div>

**GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto**.

5. "**Employee**" includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker**.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

2

008

(ii) **we** insure all **autos** owned by **you** that are used in **your** business;

(iii) no other insurance policy provides coverage for that **auto**; and

(iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

(ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

3

7. "**Insured contract**" means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or
   f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

   An "**insured contract**" does not include that part of any contract or agreement:
   1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
   2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
   3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8. "**Leased worker**" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

9. "**Loss**" means sudden, direct and accidental loss or damage.

10. "**Mobile equipment**" means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
    a. Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
    b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;

4

010

c. Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;

   d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
      (i) Power cranes, shovels, loaders, diggers, or drills; or
      (ii) Road construction or resurfacing equipment, such as graders, scrapers or rollers.
   e. Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
      (i) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or
      (ii) Cherry pickers and similar devices used to raise or lower workers.
   f. Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.

   However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11. "**Occupying**" means in, on, entering or exiting.

12. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a land motor vehicle:
    a. of the private passenger, pickup body, or cargo van type;
    b. designed for operation principally upon public roads;
    c. with at least four wheels; and
    d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

    However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16. "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or

011

adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
    a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
    b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I—Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.

6

012

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

    (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

    (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).

    (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

    (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I—Liability To Others, **insured auto** also includes:

  1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;

  2. **Mobile equipment** while being carried or towed by an **insured auto**;

  3. Any **temporary substitute auto**; and

  4. **Mobile equipment** that is:

    a. owned by **you**;

    b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

    c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:

    a. used in **your** business;

    b. operated on a public highway; and

    c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

7

013

C. When used in Part I – Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:

1. Any request, demand, order, or statutory or regulatory requirement; or
2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

a. That are, or that are contained in any property that is:
   (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
   (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
   (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
(2) The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
(2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

8

014

**ADDITIONAL PAYMENTS**

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1. all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5. reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6. all court costs taxed against the **insured** in any "suit" against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

**OUT-OF-STATE COVERAGE EXTENSION**

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

9

015

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**
   An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**
   **Bodily injury** to:
   a. An **employee** of any **insured** arising out of or within the course of:
      (i) That **employee's** employment by any **insured**; or
      (ii) Performing duties related to the conduct of any **insured's** business; or
   b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

10

016

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**
   **Bodily injury** to:
   a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
   b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7. **Care, Custody or Control**
   **Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**
   **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**
   **Bodily injury** or **property damage** resulting from or caused by the handling of property:
   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**
    **Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:
    a. That are, or that are contained in any property that is:
       (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
       (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
       (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;

11

017

b.  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

c.  After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts if:

(1)  The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2)  The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1)  The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the maintenance or use of an **insured auto**; and

(2)  The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

11. **Racing**
    **Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

12. **War**
    **Bodily injury** or **property damage** arising directly or indirectly out of:
    a.  War, including undeclared or civil war;
    b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
    c.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. **Operations**
    **Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:
    a.  any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

12

018

b. machinery or equipment that is on, attached to, or part of, a land vehicle that meets the definition of **mobile equipment**.

14. **Completed Operations**
**Bodily injury** or **property damage** arising out of, or caused by, **your** work after that work has been completed or abandoned.

For purposes of this exclusion, **your** work means:
a. Work or operations performed by **you** or on **your** behalf;
b. Materials, parts, or equipment furnished in connection with such work or operations; and
c. The delivery of liquids.

**Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

**Your** work will be deemed completed at the earliest of the following times:
a. When all of the work called for in **your** contract has been completed.
b. When all of the work to be done at a particular site has been completed if **your** contract calls for work at more than one site.
c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

15. **Criminal Acts**
**Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

16. **Vehicle Sharing—Private Passenger Autos**
**Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;

13

019

3. the number of policies issued by **us**;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

   If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
   (i) **we** are required to pay any judgment entered against **you**; or
   (ii) **we** agree to settle a claim or lawsuit;
   for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

   Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

3. **Separate Bodily Injury Liability and Property Damage Liability Limits**

   Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

   a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.
   b. Subject to the **bodily injury** liability limit for "each person", the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for

14

020

**bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c. The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:

a. is a **trailer** specifically described on the **declarations page**; and
b. is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

Any amount payable under Part I—Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II—DAMAGE TO YOUR AUTO

### INSURING AGREEMENT—COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

## INSURING AGREEMENT—FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

## ADDITIONAL COVERAGE

### 1. **Transportation Expenses**

**We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss**.

### 2. **Coverage for Temporary Substitute Autos**

If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the Actual Cash Value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

16

022

## 3. Pet Injury Coverage

If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

### Insuring Agreement

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:
1. for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2. a death benefit if the **pet** dies in, or as a direct result of, the covered **loss**.

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

### Limits of Liability

The following additional Limits of Liability apply to Pet Injury Coverage:
1. The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of **pets** involved.
2. If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3. No deductible shall apply to this coverage.

## ADDITIONAL PAYMENTS

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1. All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the **auto** to be a total loss.
2. All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

When used in Part II—Damage To Your Auto:

1. "**Finance agreement**" means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an

023

**insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2. "**Permanently attached equipment**" or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto**. **Permanently attached equipment** also includes:
   a. accessories designed to work as part of the equipment or devices;
   b. load securing equipment and devices; and
   c. custom paint or decals.

3. "**Pet**" means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II—DAMAGE TO YOUR AUTO.**

1. **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   a. **War or Military Action**
      (1) war, including undeclared or civil war;
      (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
      (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   b. **Nuclear Hazard**
      (1) the explosion of any weapon employing atomic fission or fusion; or
      (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2. **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3. **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4. **We** will not pay for **loss** due and confined to:
   a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.

024

blowouts, punctures, flat spots, or other road damage to tires.
But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5. **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6. **We** will not pay for **loss** caused by **you** or an insured participating in or pre-paring for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7. **We** will not pay for **loss** to an **insured auto** for diminution of value.

8. If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:
   a. Overdue **finance agreement** payments including any type of late fees or penalties;
   b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;
   c. Security deposits not normally refunded by the lessor or lender;
   d. Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;
   e. Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or
   f. Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9. **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

## LIMIT OF LIABILITY

1. If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality; or
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

19

025

**Permanently attached equipment (PAE)** is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2. If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality;
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or
   d. the applicable Stated Amount of the property as shown on the **declarations page**.

   However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:
   a. greater than the actual cash value of the **insured auto** at the time of **loss**; and
   b. the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**;
   is the lesser of:
   a. the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or
   b. the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

   **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3. Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:
   a. in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:
      (i) shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or

and

(ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:
    (a) original manufacturer parts or equipment; and
    (b) non-original manufacturer parts or equipment;

b. the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

c. duplicate recovery for the same elements of damages is not permitted.

4. To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a. the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;

b. an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and

c. an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

## DEDUCTIBLE

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

027

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:

1.  when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or
2.  when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

## SALVAGE

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

## NO BENEFIT TO BAILEE

No bailee or carrier shall benefit, directly or indirectly, from this Part II—Damage To Your Auto.

## APPRAISAL

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the

appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

## PAYMENT OF LOSS

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

## LOSS PAYEE AGREEMENT

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:
1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.
Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

## GENERAL PROVISIONS

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

029

2. **Policy Changes**

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:
a. the number, type, or use classification of **insured autos**;
b. operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;
c. the place of principal garaging of any **insured auto**;
d. coverage, deductibles, or limits of liability; or
e. rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3. **Other Insurance**

a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

b. If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** pro-

portionate share is the proportion that the limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. **Two or More Policies Issued By Us**

   If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5. **Legal Action Against Us**

   **We** may not be sued unless there is full compliance with all the terms of this policy.

   **We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6. **Our Recovery Rights**

   In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

   When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

   In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

   Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:
   a. any other named insured on the policy;

25                              031

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and
c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;
at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;

26

032

2. conceal or misrepresent any material fact or circumstance, or

3. engage in fraudulent conduct;

in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12. **Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14. **Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15. **Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at

033

the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

   **You** must promptly notify **us** when:
   1. **your** mailing or business address changes;
   2. the principal garaging address of an **insured auto** changes;
   3. there is any change with respect to the persons who operate an **insured auto**;
   4. there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
   5. **you** acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

   If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 6912 (02/19)

# INDEX OF ENDORSEMENTS

**All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy.**

| Form No./Description | Page |
| --- | --- |
| 1652 FL (02/19)<br>**Personal Injury Protection Coverage Endorsement** | 31 |
| 1797 (02/19)<br>**Contingent Liability Endorsement—Limited Liability Coverage For Non-Trucking Use Of An Automobile** | 40 |
| 1890 (02/19)<br>**Employer's Non-Ownership Liability Endorsement** | 40 |
| 1891 (02/19)<br>**Hired Auto Coverage Endorsement** | 42 |
| 2366 (02/11)<br>**Blanket Additional Insured Endorsement** | 43 |
| 2367 (06/10)<br>**Blanket Waiver of Subrogation Endorsement** | 44 |
| 2368 (06/10)<br>**Loan/Lease Gap Coverage Endorsement** | 44 |
| 2852 FL (02/19)<br>**Uninsured Motorist Coverage Endorsement** | 45 |
| 4717 (02/19)<br>**Trailer Interchange Coverage Endorsement** | 52 |
| 4757 FL (02/19)<br>**Medical Payments Coverage Endorsement** | 54 |
| 4852 FL (02/19)<br>**Cancellation and Nonrenewal Endorsement** | 60 |
| 4881 FL (02/19)<br>**Florida Amendatory Endorsement** | 62 |

035

5701 (02/15)
**Individual Named Insured Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . .66

Z228 (01/11)
**Mobile Equipment As Insured Autos Endorsement**. . . . . . . . . . . . . . . . . .67

Z438 (02/19)
**Garage Operations Physical Damage Legal Liability
Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .69

Z439 (02/19)
**Non-Owned Trailer Physical Damage Coverage Endorsement**. . . . . . . . .75

Z442 (02/19)
**Any Automobile Legal Liability Coverage Endorsement** . . . . . . . . . . . . . .78

Form 1652 FL (02/19)

**PERSONAL INJURY PROTECTION COVERAGE ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Personal Injury Protection Coverage, **we** will pay benefits which an **insured** is entitled to receive pursuant to the Florida Motor Vehicle No-Fault Law, as amended, because of **bodily injury**:
1. caused by an **accident**;
2. sustained by an **insured**; and
3. arising out of the ownership, maintenance or use of a **motor vehicle**.

Personal Injury Protection Coverage benefits consist of:
1. **medical benefits**;
2. **disability benefits**; and
3. **death benefits**.

### ADDITIONAL DEFINITIONS

When used in this endorsement:
1. "**Death benefits**" means benefits of $5,000 payable per individual if an **insured** dies because of injury covered under this endorsement.
2. "**Disability benefits**" means 60 percent of **work loss** per **insured** from inability to work proximately caused by the injury sustained by the **insured**. **Disability benefits** also include all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those services that, but for the **bodily injury**, the **insured** would have performed without income for the benefit of his or her household.
3. "**Emergency medical condition**" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part.
4. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i) **you** or any **resident relative** sustaining **bodily injury** while **occupying** a **motor vehicle**, or when struck by a **motor vehicle** while not **occupying** a self-propelled vehicle;

31

037

       (ii) any person sustaining **bodily injury** while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** while attached to an **insured auto**; or

       (iii) any person, if a resident of Florida, sustaining **bodily injury** when struck by an **insured auto** or **temporary substitute auto** while not **occupying** a self-propelled vehicle; and

  b. if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person:

       (i) any person sustaining **bodily injury** while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** while attached to an **insured auto**; or

       (ii) any person, if a resident of Florida, sustaining **bodily injury** when struck by an **insured auto** or **temporary substitute auto** while not **occupying** a self-propelled vehicle.

5. "**Medical benefits**" means 80 percent of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services. All of the following statutory references are to Florida law. **Medical benefits** are limited to: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow-up services and care received beyond the initial 14 days after the motor vehicle accident if services and care have been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by a statutorily authorized provider, and the follow-up services and care are consistent with the underlying medical diagnosis. **Medical benefits** provide reimbursement for: 1) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment, or 2) upon referral by a provider described in subparagraph 1), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1) which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by the following persons or entities: a) hospital or ambulatory surgical center licensed under chapter 395, b) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners, c) an entity that owns or is wholly owned, directly or

indirectly, by a hospital or hospitals, d) a physical therapist licensed under chapter 486, based upon a referral by a provider described in this subparagraph, e) a health care clinic licensed under part X of chapter 400 which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or (i) has a medical director licensed under chapter 458, chapter 459, or chapter 460; (ii) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and (iii) provides at least four of the following medical specialties: (A) General medicine, (B) Radiography, (C) Orthopedic medicine, (D) Physical medicine, (E) Physical therapy, (F) Physical rehabilitation, (G) Prescribing or dispensing outpatient prescription medication, (H) Laboratory services. **Medical benefits** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

6. "**Medically necessary**" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   a. in accordance with generally accepted standards of medical practice;
   b. clinically appropriate in terms of type, frequency, extent, site, and duration; and
   c. not primarily for the convenience of the patient, physician, or other health care provider.

7. "**Motor vehicle**" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any trailer or semi-trailer designed for use with such self-propelled vehicle. A **motor vehicle** does not include:
   a. a mobile home; or
   b. any motor vehicle which is used in mass transit, other than public school transportation, and designed to transport more than five passengers not including the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state.

8. "**Owned**" means the person:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six months or more.

9. "**Owner**" means the person who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six months or more.

10. "**Resident relative**" means a relative of any degree by blood or by marriage, or who is adopted, a foster child, or a ward of the state, and who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

11. "**Work loss**" means loss of gross income and loss of earning capacity.

## **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS EN-DORSEMENT.**

Coverage under this endorsement does not apply to **bodily injury**:
1. sustained by **you** or a **resident relative** while **occupying** another **motor vehicle owned** by **you** and not insured under this policy;
2. sustained by any person operating an **insured auto** or **temporary substitute auto** without **your** express or implied consent;
3. to any injured person, if such person's conduct contributed to his or her **bodily injury** under any of the following circumstances:
   a. intentionally causing **bodily injury** to himself or herself; or
   b. sustaining such **bodily injury** while committing a felony. However, whenever an **insured** is charged with such conduct, the required 30-day payment provision shall be held in abeyance, and the insurer shall withhold payment of any personal injury protection benefits pending the outcome of the case at the trial level. If the charge is nolle prossed or dismissed or the **insured** is acquitted, the 30-day payment provision shall run from the date the insurer is notified of such action;
4. sustained by any person, other than **you**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;
5. sustained by any person, other than **you** or a **resident relative**, who is entitled to personal injury protection benefits from the insurer or **owner** of a **motor vehicle** that is not an **insured auto** or **temporary substitute auto** under this policy;
6. sustained by any person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises;
7. with respect to **work loss**, if such **bodily injury** is sustained by **you**, and if a named insured has elected to exclude **work loss** for either **you** or **your** dependent resident relatives, as indicated on the **declarations page**;
8. with respect to **work loss**, if such **bodily injury** is sustained by a dependent resident relative, and if a named insured has elected to exclude **work loss** for **you** and dependent resident relatives, as indicated on the **declarations page**; or
9. sustained by any person while **occupying** a covered **motor vehicle** while it is being used for ride-sharing activity.

## **LIMIT OF LIABILITY**

The limit of liability shown on the **declarations page** for Personal Injury Protection is the most **we** will pay for each **insured** injured in any one accident, regardless of the number of:
1. claims made;

34

2. **insured autos**;
3. **insureds**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If no **emergency medical condition** exists or no determination has been made, the maximum reimbursement for **medical benefits** and **disability benefits** is limited to $2,500. If an **emergency medical condition** exists, the insured is eligible to receive up to $10,000 in **medical benefits** and **disability benefits**. That determination can affirmatively be made only by a physician or physician assistant licensed under chapter 458 or 459, a dentist licensed under chapter 466, or an advanced registered nurse practitioner licensed under chapter 464, and further can be made only if no physician or physician assistant licensed under chapter 458 or 459, no chiropractic physician licensed under chapter 460, no dentist licensed under chapter 466, no advanced registered nurse practitioner licensed under chapter 464, no physical therapist licensed under chapter 486, and no person or entity licensed under part III of chapter 401 who provides emergency transportation and treatment has determined that the injured person did not have an **emergency medical condition**. This provision is applicable to all claims without regard to the identity, or status, of the entity seeking reimbursement, including those claims submitted by government entities possessing a statutory right to present claims under this endorsement.

Benefits received under any workers' compensation law shall be credited against the benefits provided under this endorsement. Any deductible elected by a named insured under Personal Injury Protection Coverage applies to those persons indicated as subject to a deductible on the **declarations page**. Any deductible that applies to the named insured shall apply to all persons listed as a named insured on the **declarations page** and any spouse of a named insured. When a deductible applies, the deductible will be applied to 100 percent of the expenses and losses covered under Personal Injury Protection Coverage. A separate $5,000 benefit limit is reserved exclusively for **death benefits**. However, the deductible shall not be applied to reduce **death benefits**.

Personal Injury Protection Coverage is primary to any Medical Payments Coverage endorsement that is part of this policy.

**OTHER INSURANCE**

If there is other applicable personal injury protection coverage for the same injury to any one **insured**, the most the **insured** may recover is the maximum amount payable for personal injury protection benefits under the Florida Motor Vehicle No-Fault Law, as amended. If there is other applicable personal injury protection coverage, and **we** make a payment under this endorsement, **we** are entitled to recover from each of the other insurers an equitable pro rata share of the amount paid and expenses incurred in processing the claim.

If an **insured** sustains **bodily injury** while **occupying**, or being struck by, a **motor vehicle** which is rented or leased, the liability coverage and the personal injury protection coverage provided by the lessor's policy shall be primary unless the rental or lease agreement includes a provision which specifies that the valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by §§ 324.021(7) and 627.736, Florida Statutes.

## CONDITIONS

In addition to the Duties in the Event of an Accident or Loss and the General Provisions of this policy, the following conditions apply to coverage afforded under this Personal Injury Protection Coverage endorsement.

**Policy Period and Territory**. The coverage under this endorsement applies only to **accidents** which occur during the policy period:
1. in the State of Florida; and
2. when the named insured shown on the **declarations page** is a natural person:
   a. with respect to **you** or a **relative** while **occupying** an **insured auto** or **temporary substitute auto** outside the State of Florida but within the United States of America, its territories or possessions, or Canada; and
   b. with respect to **you** while **occupying** a **motor vehicle owned** by a **resident relative**, and for which security is maintained under the Florida Motor Vehicle No-Fault Law, as amended, outside the State of Florida but within the United States of America, its territories or possessions, or Canada; or
3. when the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person, with respect to occupants of an **insured auto** or **temporary substitute auto**, who are lawful residents of the State of Florida, outside the State of Florida but within the United States of America, its territories or possessions, or Canada.

**Duties in Case of an Accident or Loss.** As a condition precedent to obtaining Personal Injury Protection Coverage, a person must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person claiming coverage, and answer all reasonable questions **we** may ask and provide any documents, records, or other tangible items that **we** request, when, where, and as often as **we** may reasonably require; and
4. authorize **us** to obtain medical and other records.

**Examination under Oath**. An insured seeking benefits must comply with the terms of the policy, which include, but are not limited to, submitting to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with this paragraph is a condition precedent to receiving benefits.

36

042

**Refusal to Submit to Medical Examination.** If a person making a claim under this endorsement unreasonably refuses to submit to or fails to appear at a medical examination required by **us**, **we** shall not be liable for further payments under this endorsement. A refusal to submit to or a failure to appear at two examinations raises a rebuttable presumption that the refusal or failure was unreasonable.

## UNREASONABLE OR UNNECESSARY MEDICAL BENEFITS

If an **insured** incurs **medical benefits** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those medical benefits and contest them.

**We** will determine to be unreasonable any charges incurred that exceed the maximum charges set forth in Section 627.736 (5)(a)(1) (a through f) of the Florida Motor Vehicle No-Fault Law, as amended. Pursuant to Florida law, **we** will limit reimbursement to a maximum of, and pay an amount not to exceed, 80 percent of the following schedule of maximum charges:

a. for emergency transport and treatment by providers licensed under Chapter 401 of the Florida Statutes, 200 percent of Medicare;

b. for emergency services and care provided by a hospital licensed under Chapter 395 of the Florida Statutes, 75 percent of the hospital's usual and customary charges;

c. for emergency services and care as defined by Section 395.002 of the Florida Statutes, provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community;

d. for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services;

e. for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services; and

f. for all other medical services, supplies and care, 200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B, except as follows:

   (1) for services, supplies and care provided by ambulatory surgical centers and clinical laboratories, 200 percent of the allowable amount under Medicare Part B; and

   (2) for durable medical equipment, 200 percent of the allowable amount under "The Durable Medical Equipment Prosthetics/Orthotics and Supplies" fee schedule of Medicare Part B.

However, if such services, supplies or care is not reimbursable under Medicare Part B, as provided in this subsection f., **we** will limit reimbursement to a maximum of, and pay an amount not to exceed 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 of the Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies or care is provided. Services, supplies or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by **us**.

043

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies or care is rendered and for the area in which such services, supplies or care is rendered. This applicable fee schedule or payment limitation applies to service, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedules of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B. For purposes of this paragraph, "service year" means the period from March 1 through the end of February of the following year.

In determining the appropriate reimbursement under the applicable Medicare fee schedule, all reasonable, **medically necessary**, and covered charges for services, supplies and care submitted by physicians, non-physician practitioners, or any other provider will be subject to the Center for Medicare Services (CMS) coding policies and payment methodologies, including applicable modifiers. The CMS policies include, but are not limited to: coding edits, both mutually exclusive and inclusive, payment limitations, and coding guidelines subject to the National Correct Coding Initiative (NCCI), Hospital Outpatient Prospective Payment System (OPPS), Multiple Procedure Payment Reduction (MPPR), and Multiple Surgery Reduction Rules (MSRR).

**We** will reduce any payment to a medical provider under this endorsement by any amounts **we** deem to be unreasonable **medical benefits**. However, the **medical benefits** shall provide reimbursement only for such services, supplies and care that are lawfully rendered, supervised, ordered or prescribed. Any reductions taken will not affect the rights of an **insured** for coverage under this endorsement. Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured** will also be reduced.

**We** have the right under this endorsement to limit reimbursement in accordance with any negotiated medical provider agreement to which **we** have access. However, if an **insured** chooses not to use such a provider with whom **we** have a negotiated agreement, **we** will not use that negotiated rate to establish what is considered reasonable for that area.

The **insured** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured** with a legal defense by counsel of **our** choice, and pay any resulting judgment. The **insured** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. **We** will also pay other reasonable expenses incurred at our request. Said payments will not operate to reduce the policy limits of liability.

38

044

**Notice That Policy Limits Have Been Reached.** Where a dispute exists between the **insured** and **us**, or between a person or entity holding a valid assignment and **us**, upon request, **we** will notify the **insured** or the assignee that the policy limits have been reached within 15 days after the limits have been reached.

**Rejection or Partial Payment due to Error in Claim.** Pursuant to FL St. 627.736(4)(b)(3), if **we** pay only a portion of a claim or reject a claim due to an alleged error in the claim, **we** will, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, will have 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

**Reasonable Belief of Fraud.** Pursuant to FL St. 627.736(4)(h), benefits are not due or payable to or on the behalf of an **insured** if that person has committed, by a material act or omission, insurance fraud relating to coverage under this endorsement, if the fraud is admitted to in a sworn statement by the **insured** or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under this endorsement of the **insured** who committed the fraud, irrespective of whether a portion of the **insured's** claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by **us** in its entirety from the person who committed insurance fraud. The prevailing party is entitled to its costs and attorney fees in any action we may bring to enforce our right of recovery under this paragraph.

Pursuant to FL St. 627.736(4)(i), if **we** have a reasonable belief that a fraudulent insurance act, for the purposes of FL St. 626.989 or FL St. 817.234, has been committed, **we** will notify the **insured**, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** will have an additional 60 days to conduct a fraud investigation. Notwithstanding the demand letter requirements of FL St. 627.736(10), no later than 90 days after the submission of the claim, **we** will deny the claim or pay the claim with simple interest as provided by law. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Investigative and Forensic Services.

**Log of Benefits Paid. We** will create and maintain for each **insured** a log of personal injury protection benefits paid. If litigation is commenced, then **we** will provide to the **insured** a copy of the log within 30 days after receiving a request for same.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UN-CHANGED.**

045

Form 1797 (02/19)

## **CONTINGENT LIABILITY ENDORSEMENT—LIMITED LIABILITY COVERAGE FOR NON-TRUCKING USE OF AN AUTOMOBILE**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### **PART I—LIABILITY TO OTHERS**

A. Under the Additional Definitions Used In This Part Only section:

Subsection A.3. is deleted and replaced by the following:

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. However, **insured** does not include anyone engaged in the business of transporting property by auto for hire that is liable for **your** conduct.

B. Under the Exclusions of Part I, the following exclusion is added:

### **Trucking Use**
Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
b. In any business or for any business purpose.

## **ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 1890 (02/19)

## **EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

40

046

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

### CHANGES TO PART I—LIABILITY TO OTHERS

The definition of **insured auto** is modified to include a **non-owned auto** when used in connection with **your** business by **you** or any of **your employees**. The definition of **insured** does not include the owner of a **non-owned auto**.

### EXCLUSIONS

The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member and which is not shown as the named insured on the **declarations page**.

### OTHER INSURANCE

The insurance provided by this endorsement is excess over any other valid and collectible insurance.

### PREMIUM AGREEMENT

**We** may audit the number of employees and charge appropriately for additional premium up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

047

Form 1891 (02/19)

## **HIRED AUTO COVERAGE ENDORSEMENT**

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### **Additional definitions used in this endorsement**

If **you** pay a premium for this Hired Auto Coverage, then the following definitions are added:

1. "**Hired auto**" means an **auto**:
   a. **you** lease, hire, rent or borrow; or
   b. **your employee** leases, hires or rents:
      i. under a contract in that individual **employee's** name;
      ii. at **your** direction and with **your** express permission; and
      iii. only while being used in the conduct of **your** business.

   This does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.
2. "**Cost of hire**" means the total amount paid by **you** for the hire of **autos**.

### **Changes to Part I—Liability To Others**

When used in Part I—Liability To Others, the definition of **insured auto** is amended to include **hired auto**.

### **Other Insurance**

The insurance provided by this Hired Auto Coverage endorsement is excess over any other valid and collectible insurance, whether primary, excess, or contingent.

### **Premium agreement**

The premium for this Hired Auto Coverage is based on the **cost of hire**, and is subject to a minimum **cost of hire**. **We** may audit the **cost of hire** and charge appropriately for additional premium for up to three years after the policy expiration.

42

048

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 2366 (02/11)

### BLANKET ADDITIONAL INSURED ENDORSEMENT

---

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Additional Insured Endorsement, **we** agree with **you** that any person or organization with whom **you** have executed a written agreement prior to any **loss** is added as an additional **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**.

Regardless of the provisions of paragraph a. and b. of the "Other Insurance" clause of this policy, if the person or organization with whom **you** have executed a written agreement has other insurance under which it is the first named **insured** and that insurance also applies, then this insurance is primary to and non-contributory with that other insurance when the written contract or agreement between **you** and that person or organization, signed and executed by **you** before the **bodily injury** or **property damage** occurs and in effect during the policy period, requires this insurance to be primary and non-contributory.

In no way does this endorsement waive the "Other Insurance" clause of the policy, nor make this policy primary to third parties hired by the **insured** to perform work for the **insured** or on the **insured's** behalf.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

43

049

Form 2367 (06/10)

## BLANKET WAIVER OF SUBROGATION ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Waiver of Subrogation Endorsement, **we** agree to waive any and all subrogation claims against any person or organization with whom a written waiver agreement has been executed by the named insured, as required by written contract, prior to the occurrence of any **loss**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2368 (06/10)

## LOAN/LEASE GAP COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **insured auto** for which this coverage was purchased is deemed by **us** to be a **total loss**, **we** will pay, in addition to any amounts otherwise payable under Part II of **your** policy, the difference between:
1. the actual cash value of the **insured auto** at the time of the **total loss**; and
2. any greater amount the owner of the **insured auto** is legally obligated to pay under a written loan or lease agreement to which the **insured auto** is subject at the time of the **total loss**, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

44

050

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **insured auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **insured auto** and the loss is covered under one of those coverages.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2852 FL (02/19)

### UNINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

**We** will not pay for damages consisting of pain, suffering, mental anguish, or inconvenience unless the injury or disease consists in whole or in part of:
1. significant and permanent loss of an important bodily function;
2. permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;
3. significant and permanent scarring or disfigurement; or
4. death;

as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law, as amended.

An **insured** must notify **us** in writing by certified or registered mail at least 30 days before entering into any settlement with the **owner** or operator of an **uninsured auto**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf

051

of, the **owner** or operator of an **uninsured auto**. If **we** do this, **you** agree to assign to **us** all subrogation rights that **you** have against the **owner** or operator of an **uninsured auto**.

Any judgment or settlement for damages against an **owner** or operator of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Auto**" means a land motor vehicle designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing; or
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.
2. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i) **you** or a **relative**;
      (ii) any person **occupying your insured auto** or a **temporary substitute auto**; and
      (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:
      (i) any person **occupying your insured auto** or a **temporary substitute auto**; and
      (ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

   For purposes of this definition, **insured auto** includes **mobile equipment** that is:
   a. owned by **you**;
   b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

c. nor owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

   i.   used in **your** business;
   ii.  operated on a public highway; and
   iii. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

3. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.

4. "**Owned**" means the person or organization:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5. "**Owner**" means the person or organization who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

6. "**Uninsured auto**" means an **auto** or trailer of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the **accident**;
   b. to which a bodily injury liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
      (i)  denies coverage; or
      (ii) is or becomes insolvent;
   c. to which a bodily injury liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the **bodily injury** damages an **insured** is legally entitled to recover; or
   d. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an accident, with or without physical contact, resulting in **bodily injury** to an **insured**, provided that the **insured**, or someone on his or her behalf, reports the **accident** to the police or civil authority within 24 hours or as soon as practicable after the **accident**.

An "**uninsured auto**" does not include any motorized auto or equipment:

   a. **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**. However, this shall not apply to an **insured auto** when coverage is denied under Part I—Liability To Others of this policy because of the exclusion of **bodily injury** to **you** or a **relative**, if the **bodily injury** results from operation of the **insured auto** by a person other than **you** or a **relative**;

b. designed mainly for use off public roads, while not on public roads;
c. while being used as a residence or premises;
d. shown on the **declarations page** of this policy;
e. not required to be registered as a motor vehicle; or
f. afforded liability coverage under this policy.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

1.  Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:
    a.  an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;
    b.  a **non-owned auto** without the express or implied permission of the **owner**; or
    c.  an **auto** or device of any type designed to be operated on the public roads that is **owned** by **you** or, if the named insured is a natural person, a **relative**, other than an **insured auto** or **temporary substitute auto**. However, this exclusion does not apply if **you** have elected stacked uninsured motorist coverage.
2.  Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law;
3.  Coverage under this endorsement will not apply to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent, unless **our** right to recover payment has not been prejudiced by such settlement. However, this exclusion does not apply to a settlement to which **we** have consented with the insurer of a vehicle described in section 6.c. of the definition of an **uninsured auto**; or
4.  Coverage under this endorsement will not apply to **bodily injury** arising out of the use of an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Uninsured Motorist Coverage on the **declarations page**.

054

# STACKED UNINSURED MOTORIST COVERAGE

If **you** have elected stacked uninsured motorist coverage, the following limits of liability shall apply:

If **your declarations page** shows a split limit:
a. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person. When the limits of two or more **insured autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to one person is the sum of the "each person" limits for each **insured auto** shown on the **declarations page**; and
b. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident. When the limits of two or more **insured autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to two or more persons in any one accident is the sum of the "each accident" limits for each **insured auto** shown on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. When the limits of two or more **insured autos** are stacked, the most **we** will pay for the total of all damages resulting from any one accident is the sum of the combined single limits for each **insured auto** shown on the **declarations page**.

## NON-STACKED UNINSURED MOTORIST COVERAGE

If **you** have elected non-stacked uninsured motorist coverage, the following limits of liability shall apply:

If **your declarations page** shows a split limit:
a. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
b. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
a. claims made;
b. **insured autos**;
c. **insureds**;

49

055

   d. lawsuits brought;
   e. vehicles involved in the accident; or
   f. premiums paid.

**STACKED AND NON-STACKED UNINSURED MOTORIST COVERAGE**

Whether **you** have elected stacked uninsured motorist coverage or non-stacked uninsured motorist coverage, the following provisions shall apply:

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death, if recoverable under the applicable law.

In determining the amount payable under this endorsement, the amount of damages that an **insured** is entitled to recover for **bodily injury** will be reduced by:
   a. all sums paid because of **bodily injury** by any persons or organizations that may be legally responsible;
   b. all sums paid or payable under Part I—Liability To Others;
   c. all sums paid or payable under Personal Injury Protection Coverage or Medical Payments Coverage;
   d. all sums paid or payable because of **bodily injury** under any of the following or similar laws:
      (i) workers' compensation law; or
      (ii) disability benefits law;
   e. all sums paid or payable as personal injury protection benefits; and
   f. the amount of the limits of the uninsured motorist's liability policy, even if the settlement reached with the uninsured motorist is less than the amount of the limits of the uninsured motorist's liability policy.

No one will be entitled to duplicate payments for the same elements of damages.

Any judgment or settlement for damages against an operator or **owner** of an **uninsured auto** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

**OTHER INSURANCE**

**When the named insured is a natural person**

1. If **you** have elected stacked uninsured motorist coverage, the following shall apply:

   If there is other uninsured motorist coverage that applies to the accident on a primary basis, **we** will pay only **our** proportionate share of the damages.

2. If **you** have elected non-stacked uninsured motorist coverage, the following shall apply:

If there is other uninsured motorist coverage that applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage. **We** will pay only **our** proportionate share of the damages. This applies no matter how many autos or auto policies may be involved, whether written by **us** or another company.

3. Whether **you** have elected stacked uninsured motorist coverage or non-stacked uninsured motorist coverage, the following provisions shall apply:

Any insurance **we** provide with respect to a vehicle that is not an **insured auto** will be excess over any other uninsured motorist coverage.

If an **insured** sustains **bodily injury** while **occupying** a motor vehicle, other than an **insured auto**, the **insured** may elect to receive excess uninsured motorist benefits under only one policy of insurance under which the **insured** is an insured. If the **insured** elects to receive excess uninsured motorist benefits under a policy of insurance other than this policy, **we** will not pay any uninsured motorist benefits due to **bodily injury** to the **insured**.

If an **insured** sustains **bodily injury** while not occupying a motor vehicle, the **insured** may elect to receive uninsured motorist benefits under only one policy of insurance under which the **insured** is an insured. If the **insured** elects to receive uninsured motorist benefits under a policy of insurance other than this policy, **we** will not pay any uninsured motorist benefits due to **bodily injury** to the **insured**.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

**When the named insured is a corporation, partnership, organization or any other entity that is not a natural person**

If there is other applicable uninsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide for the occupant of an **insured auto** shall be excess over any other uninsured motorist coverage.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

**TRUST AGREEMENT**

If an **insured** elects to receive or receives uninsured motorist benefits under this policy and subsequently elects to receive or receives uninsured motorist benefits under a policy of insurance other than this policy, that **insured** will hold the amount of those benefits in trust pending a determination regarding whether **we** are entitled to reimbursement of all or a portion of **our** uninsured motorist benefit payments.

**OUR RIGHTS TO RECOVER PAYMENT**

If an **insured** recovers from another without **our** written consent, the **insured's** right to payment under any affected coverage will no longer exist. This applies in the event the **insured's** recovery is prejudicial to **us**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4717 (02/19)

### TRAILER INTERCHANGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Trailer Interchange Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession. The **trailer** must be in **your** possession under a written trailer or equipment interchange agreement in which **you** assume liability for **loss** to the **trailer** while in **your** possession.

**We** will pay for a **loss** to the **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:
a. Collision Coverage. For **loss** caused by:
    (i) The **trailer's** collision with another object; or
    (ii) The **trailer's** overturn.
b. Comprehensive Coverage. For any **loss** except one caused by:
    (i) The **trailer's** collision with another object; or
    (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITION

"**Trailer**", when used in this endorsement, includes a shipping container.

### ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:
a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.
c. the premiums on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;
e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and
f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

### EXCLUSIONS

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
  (i) Nuclear Hazard.
    (1) The explosion of any weapon employing atomic fission or fusion; or
    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
  (ii) War or Military Action.
    (1) War, including undeclared or civil war;
    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or
    (3) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.
b. **We** will not pay for loss of use.

c. **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;

   (i) Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion; or
   (ii) Blowouts, punctures, or other road damage to tires.

## LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a. The actual cash value of the damaged or stolen property at the time of the **loss**;
b. The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condition; or
d. The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 4757 FL (02/19)

### MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Medical Payments Coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of the **motor vehicle accident** because of **bodily injury**:

1. sustained by an **insured**; and

2. caused by that **motor vehicle accident**.

**We**, or someone on **our** behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

There is no coverage under this endorsement for:
1. mileage costs for use of a personal vehicle;
2. any interest charges;
3. any **medical services** if the **insured** does not receive initial **medical services** and care from an initial services provider within 14 calendar days after the **motor vehicle accident**;
4. massage of any body part either through one-on-one contact, or the use of any devices, or equipment that provide mechanical or electrical massage with or without heat;
5. acupuncture services, including all adjunctive therapies and diagnostic techniques, including herbs, rubs and oils, aromatherapy, cupping, dieting, and other oriental exercises and stretching techniques; or
6. any **medical services**, supplies, or care provided by a massage therapist or an acupuncturist.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i) **you** or a **relative** while **occupying** an **auto**; and
      (ii) **you** or a **relative** when struck by a **motor vehicle** or a **trailer** while not **occupying** a self-propelled motorized vehicle; or
   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.
      For purposes of this definition, **insured auto** includes **mobile equipment** that is:
      (i) owned by **you**;
      (ii) leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      (iii) not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.
      However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:
      (i) used in **your** business;
      (ii) operated on a public highway; and
      (iii) operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. **Medical services** means all reasonable expenses incurred for medically necessary medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital and nursing services. All of the following statutory references are to Florida law. **Medical services** are limited to: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow-up services and care received beyond the initial 14 days after the motor vehicle accident if services and care has been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by an authorized provider as defined under the Florida No Fault law, as amended, and the follow-up services and care are consistent with the underlying medical diagnosis. **Medical services** provide reimbursement for: 1) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment, or 2) upon referral by a provider described in subparagraph 1), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1) which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by the following persons or entities: a) hospital or ambulatory surgical center licensed under chapter 395, b) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners, c) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals, d) a physical therapist licensed under chapter 486, based upon a referral by a provider described in this subparagraph, e) a health care clinic licensed under part X of chapter 400 which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or (i) has a medical director licensed under chapter 458, chapter 459, or chapter 460; (ii) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and (iii) provides at least four of the following medical

specialties: (A) General medicine, (B) Radiography, (C) Orthopedic medicine, (D) Physical medicine, (E) Physical therapy, (F) Physical rehabilitation, (G) Prescribing or dispensing outpatient prescription medication, (H) Laboratory services. **Medical services** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical services**.

3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this endorsement does not apply to **bodily injury**:

1. sustained while **occupying** any **auto** or **trailer** while being used as a residence or premises;
2. occurring during the course of employment if workers' compensation coverage should apply;
3. arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using an **insured auto**;
4. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
5. due to a nuclear reaction or radiation;
6. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
7. for which the United States Government is liable under the Federal Tort Claims Act;
8. sustained by any person while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;
9. sustained by any person while **occupying** any vehicle, other than an **insured auto**, without the express or implied permission of the owner of the vehicle or the person in lawful possession of the vehicle;
10. that is intentionally inflicted on an **insured** at that person's request or self-inflicted;
11. sustained while **occupying** any vehicle that has less than four wheels or is not designed for operation principally upon public roads;

57

063

12. caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether the **insured** is actually charged with, or convicted of, a crime. This exclusion does not apply to moving traffic violations; or

13. for which coverage is not afforded under a Personal Injury Protection endorsement for any reason. This exclusion does not apply to **medical services** covered under a Personal Injury Protection endorsement but not paid solely due to:

    a. the application of the statutory 80 percent reimbursement limitation;
    b. the exhaustion of all applicable personal injury protection coverage; or
    c. the $2,500 limit of liability under Personal Injury Protection endorsement for non-emergency medical conditions.

## LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers** shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Medical Payments Coverage on the **declarations page**.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured** under this endorsement will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or any applicable Uninsured Motorist Coverage Endorsement.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

Any amounts payable for **medical services** to an **insured** under this endorsement shall be excess over any personal injury protection coverage paid or payable under a Personal Injury Protection endorsement or which would be available but for the application of a deductible. This means that subject to the limit of liability shown on the **declarations page**, **we** will pay under this endorsement only for expenses that:

1. are the portion of any claim for **medical benefits** otherwise covered but not payable under a Personal Injury Protection endorsement due to coinsurance under that part. This is the 20 percent of reasonable expenses left over after the application of the 80 percent limitation in this endorsement definition of **medical benefits**; or

2. exceed the **medical benefits** paid under this endorsement.

064

**We** will not provide reimbursement for any **medical services**, care, or supplies that are not required to be reimbursed under the Florida Motor Vehicle No-Fault Law. However, **we** will not deny reimbursement under this endorsement solely because charges for a non-emergency medical condition exceed the $2,500 limit of liability for such conditions under a Personal Injury Protection endorsement.

Coverage under this endorsement shall not be available to pay any deductible for personal injury protection coverage.

### UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them. **We** will determine to be unreasonable any charges that **we** would determine to be unreasonable under the Unreasonable Or Unnecessary Medical Benefits provision in a Personal Injury Protection endorsement.

**We** have the right under this endorsement to limit reimbursement in accordance with any negotiated medical provider agreement to which **we** have access. The **insured** shall not be responsible for any reduction applied by **us**. If a medical provider disputes an amount paid by **us** under this provision, **we** will be responsible for resolving such disputes.

If the medical service provider sues the **insured** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request. **We** will not pay any sanctions awarded or assessed against an **insured** due to intentional misrepresentation or concealment committed by that **insured** during the course of any lawsuit, associated discovery, or other proceedings.

### OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured occupying**:

1.  an **auto**, other than an **insured auto** or **temporary substitute auto**; or
2.  a **trailer**, other than a **trailer** while connected to an **insured auto**;

will be excess over any other **auto** or **trailer** insurance providing payments for **medical services**.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

065

Form 4852 FL (02/19)

## **CANCELLATION AND NONRENEWAL ENDORSEMENT**

Except as specifically modified in this Endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### **CANCELLATION**

**You** may cancel this policy by calling or writing **us**, and stating the future date that **you** wish the cancellation to be effective. However, **you** may not cancel coverage for property damage liability or personal injury protection under this policy within the first two months of the effective date of the initial policy period unless:

1. an **insured auto** is totally destroyed;
2. the ownership of an **insured auto** is transferred;
3. another policy insures an **insured auto**; or
4. **you** have been charged a premium that is incorrect for the coverage set forth in **your** insurance application and **we** have given **you** notice of additional premium due.

Upon receipt of a written request, the named insured may cancel this policy within the first 60 days of the initial policy period if the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records. If **we** cancel this policy due to nonpayment of premium, notice of cancellation will be mailed at least 10 days before the effective date of cancellation. If cancellation is due to any reason other than nonpayment of premium, notice will be mailed at least 45 days before the effective date of cancellation.

During the first 60 days immediately following the effective date of the initial policy period, **we** may cancel **your** policy for nonpayment of premium if the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason or for any other type of premium payment that was subsequently determined to be rejected or invalid.

**We** may cancel this policy for any reason by mailing a notice of cancellation within the first 59 days of the initial policy period.

After this policy is in effect for more than 60 days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;
2. misrepresentation by **you** of any material fact in the procurement or renewal of this policy or in the submission of any claim under this policy; or
3. any other reason specified by law.

**We** may not cancel coverage for property damage liability or personal injury protection for nonpayment of premium within the first 60 days of the initial policy period unless the reason for cancellation is the issuance of a check for the premium that is dishonored for any reason.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **autos**.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is canceled, any refund due will be computed on a daily pro-rata basis.

If **we** cancel this policy, or if the cancellation is for nonpayment of premium, any refund due will be mailed within 15 days of the effective date of the policy cancellation.

If **you** cancel **your** policy, or if the named insured is a service member, as defined in Florida Statute §250.01, and he or she cancels due to being called to active duty or being transferred by the United States Armed Forces to a location where the insurance is not required, any refund due will be mailed within 30 days of the effective date of the policy cancellation. **We** may require a service member to present **us** proof as outlined in Florida Statute §627.7283.

## NONRENEWAL

If **we** decide not to renew or continue this policy, **we** will mail notice of nonrenewal to the first named insured shown on the **declarations page** at the last known address appearing in **our** records. Notice will be mailed at least 45 days before the end of the policy period.

If **we** offer to renew and **you** do not accept, this policy will terminate at the end of the current policy period. **Your** failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

067

**PROOF OF NOTICE**

United States postal proof of mailing or certified or registered mailing of any notice will be sufficient proof of notice.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UN-CHANGED.**

Form 4881 FL (02/19)

### FLORIDA AMENDATORY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### GENERAL DEFINITIONS

The following is deleted from the General Definitions provision:

9. "**Occupying**" means in, on, entering or exiting.

and is replaced by:

9. "**Occupying**" means in, on, entering, exiting, or alighting from.

### PART I—LIABILITY TO OTHERS

A. The Out-Of-State-Coverage Extension provision is deleted and replaced with the following.

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page** or the minimum limits as required by Florida Law, this policy will provide the higher limit; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the Limits of Liability under this policy.

068

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

B. The following is added as an additional paragraph at the end of the Exclusions section:

Pollution Exclusion Buy Back—If a payment is made subject to the MCS90 endorsement, the reimbursement language in the MCS90 endorsement is removed for a claim that is not covered under **covered pollution cost or expense** or is excluded under Exclusion 7 or 10 under Part I—Liability to Others.

C. Exclusion 15 is deleted and replaced by the following:

### 15. **Criminal Acts**
**Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion will apply only to the damages in excess of the minimum limits of liability coverage required by the financial responsibility laws of the state of Florida. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

D. The following paragraph is deleted:

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:
a. is a **trailer** specifically described on the **declarations page**; and
b. is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;
the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

and is replaced by:

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:
a. is a **trailer** specifically described on the **declarations page**; and
b. is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

069

coverage will be provided for **bodily injury** and **property damage** only up to the minimum limits as required by Florida financial responsibility law.

## PART II—DAMAGE TO YOUR AUTO

The following is deleted from the Deductible provision:

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

and is replaced by:

No deductible will apply to a **loss** to window glass under Comprehensive coverage when the glass is repaired instead of replaced.

## GENERAL PROVISIONS

A.  Item A in Subsection 3—Other Insurance is deleted and replaced by the following:

1.  For any **insured auto you** own, this policy provides primary insurance. For any **insured auto you** do not own, the insurance this policy provides is excess over any other collectible insurance. Where an **insured auto** which is a **trailer** is connected to another **auto**, the liability insurance provided by this policy is:
    (a) excess while it is connected to an **auto you** do not own; and
    (b) primary while it is connected to an **insured auto you** own.

2.  For any **insured auto you** do not own which is an authorized rental, the valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of coverage required by FL. St. 324.021(7) and FL. St. 627.736.

B.  Subsection 5. Legal Action Against Us is deleted and replaced by:

### LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an **insured** under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the **insured**, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an **insured**.

As a condition precedent to filing any legal action for medical payment benefits under the Medical Payments Coverage endorsement, written notice of intent to initiate litigation must be provided to **us** in accordance with the requirements set forth in the "Demand Letter" provisions of the "Florida Required Personal Injury

Protection Benefits statute. Therefore, **we** may not be sued for payment under the Medical Payments Coverage endorsement unless provisions of the Florida statute have been fully complied with.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

C.  The following is added to the General Provisions:

   18. **Mediation**

   Either **we** or **you** may request mediation of a claim for:
   1. **bodily injury** in the amount of $10,000 or less under Part I—Liability To Others, Part II(A)—Personal Injury Protection Coverage, Part II(B)—Medical Payments Coverage, or Part III—Uninsured Motorist Coverage of this policy; or
   2. **property damage** under Part I—Liability To Others or Part IV—Damage To A Vehicle.

   A demand for mediation shall be filed with the Florida Department of Financial Services on a form which may be obtained from the Department. The demand must state why mediation is being requested and the issue in dispute. A demand may not be made after suit has been filed relating to the same facts already mediated.

   Only one mediation may be requested for each claim unless the parties agree to further mediation. The mediator shall be selected by the Department at random. Each party may reject one mediator selected by the Department, either before or after the other party has rejected a mediator. The mediation shall be conducted informally, and may be held by telephone if agreed to by the mediator and the parties. The date, time, and place of the mediation conference shall be set by the mediator and shall be held no later than 45 days following the demand for mediation. All persons participating in the mediation must have the authority to make a binding decision. All parties must act in good faith throughout the mediation. Disclosures and statements made during mediation shall not be deemed admissions in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. The costs of mediation shall be shared equally by the parties unless the mediator determines that one party has not mediated in good faith. Any lawsuit regarding a mediated dispute must be filed as required under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

## **INDIVIDUAL NAMED INSURED ENDORSEMENT**

---

Not all customers are eligible for this coverage. This endorsement applies to **your** policy only if the form number appears on **your declarations page**. In no event will this coverage apply if the named insured is a corporation, partnership, organization, or any other entity that is not a natural person.

This endorsement changes **your** policy. Please read it carefully.

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

### **ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

As used in this endorsement:
1. "**You**" and "**yours**" include **your** spouse, if a resident of the same household, except for notice of cancellation.
2. "**Non-owned auto**" means any **private passenger auto**, pickup, van, or **trailer** not owned by or furnished or available for the regular use of **you** or any **relative**, while it is in the custody of or being operated by **you** or any **relative**, with the permission of its owner.

### **CHANGES IN PART I—LIABILITY TO OTHERS**

A. If **you** are an individual, Exclusion 6 does not apply to **bodily injury** to **your** or any **relative's** fellow **employees**.

B. If any **private passenger auto you** own is an **insured auto** under Part I— Liability To Others and that **auto** is not used for any business purpose other than ranching or farming:
   1. **Relatives** are **insureds** for any **insured auto you** own that is a **private passenger auto** and is not used for any business purpose other than ranching or farming, and for any other **auto** described in paragraph B.2. of this endorsement.
   2. Any **auto you** do not own is an **insured auto** while being used, with the permission of its owner, by **you** or by any **relative** except:
      a. Any **auto** owned by any **relative**.
      b. Any **auto** furnished or available for **your** or any **relative's** regular use, including any **auto** rented for a period of more than 30 days.
      c. Any **auto** used by **you** or by any of **your relatives** while working in a business of selling, servicing, repairing, or parking **autos**.
      d. Any **auto** other than a **private passenger auto** used by **you** or any of **your relatives** while working in any business or occupation.

072

3. Exclusion 10 does not apply to any **insured auto** that is a **private passenger auto** and is not used for any business purpose other than ranching or farming.

4. Exclusion 16 is deleted and replaced by the following:
   **Vehicle Sharing—Private Passenger Autos**
   **Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

## CHANGES IN PART II—DAMAGE TO YOUR AUTO

A. If any **private passenger auto you** own is an **insured auto** under Part II—Damage To Your Auto, and that **auto** is not used for any business purpose other than ranching or farming, then a **non-owned auto** will also be considered an **insured auto**. However, the most **we** will pay for **loss** to a **non-owned auto** that is a **trailer** is \$500.

B. Exclusion 9 is deleted and replaced by the following:
   **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.

Form Z228 (01/11)

## MOBILE EQUIPMENT AS INSURED AUTOS ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## PART I—LIABILITY TO OTHERS

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY** is modified as follows:

B. When used in PART I—LIABILITY TO OTHERS, **insured auto** also includes:
   1. **Trailers**, designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
   2. **Mobile equipment** while being carried or towed by an **insured auto**;
   3. Any **temporary substitute auto**; and

073

4. Any **mobile equipment** owned by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. This does not change the effect of exclusion 13 concerning the operation of **mobile equipment**.

## MEDICAL PAYMENTS COVERAGE

If **you** pay the premium for Medical Payments Coverage, that endorsement is modified as follows:

### ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:
  a. if the named insured shown on the **Declarations Page** is a natural person:
     (i) **you** while **occupying** any **auto**, other than an **auto owned** by **you** which is not an **insured auto**;
     (ii) a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
     (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and
     (iv) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or
  b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

## UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGES

If **you** pay the premium for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, that endorsement is modified as follows:

### ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:
  a. if the named insured shown on the **Declarations Page** is a natural person:
     (i) **you** or a **relative**;

(ii) any person **occupying your insured auto** or a **temporary substitute auto**; and

(iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:

   (i) any person **occupying your insured auto** or a **temporary substitute auto**; and

   (ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z438 (02/19)

### GARAGE OPERATIONS PHYSICAL DAMAGE
### LEGAL LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies **your** Commercial Auto Policy. Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

THIS ENDORSEMENT APPLIES ON A LEGAL LIABILITY BASIS UNLESS ONE OF THE DIRECT COVERAGE OPTIONS LISTED BELOW IS SHOWN ON **YOUR DECLARATIONS PAGE**.

### DIRECT COVERAGE OPTIONS

**Direct Excess Insurance.** If this "Direct Excess" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto** or **towed property**, and is excess over any other collectible insurance regardless of whether the other insurance covers **your** or any other **insured's** interest or the interest of the owner of the **customer's auto** or **towed property**.

075

**Direct Primary Insurance.** If this Direct Primary option **is shown on your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto**, or **towed property**, and is primary insurance.

### INSURING AGREEMENT—ON-HOOK TOWING PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this On-Hook Towing Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "On-Hook Legal Liability", **we** will pay all sums for which an **insured** is legally liable to pay for **property damage** for **loss** to **towed property**. **We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

### INSURING AGREEMENT—GARAGEKEEPERS STORAGE LOCATION PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this Garagekeepers Storage Location Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "Garagekeepers Legal Liability", **we** will pay all sums for which an **insured** is legally liable to pay as **property damage** for **loss** to a **customer's auto** or **customer's auto** equipment left in the **insured's** care while the **insured** is attending, servicing, repairing, parking, or storing it in **your garage operations** under:

1. Comprehensive Coverage.
   From any cause except:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

2. Collision Coverage.
   Caused by:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

**We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**, and only for the locations listed on **your declarations page**.

### ADDITIONAL DEFINITIONS

The following additional definitions apply throughout this Garage Operations Physical Damage Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1.  "**Customer's auto**" means a customer's land motor vehicle, **trailer**, or **watercraft**, including a **customer's auto** left with **you** for service, repair, storage, or safekeeping. Customers include **your employees** and their **relatives** who pay for services performed.

2.  "**Garage operations**" means the ownership, maintenance, or use of the locations shown on **your declarations page** for the purpose of a business of selling, servicing, repairing, parking, or storing **customers' autos**, and that portion of the roads or other accesses that adjoin such locations. **Garage operations** also includes all operations necessary or incidental to the performance of **garage operations**.

3.  "**Insured**" means:
    a.  **you**; and
    b.  **your** partners (if **you** are a partnership), members (if **you** are a limited liability company), employees, directors, or shareholders, but only while acting within the scope of their duties.

4.  "**Loaded in or on**" means connected to.

5.  "**Towed property**" means tangible property, not owned by or registered to **you**, in transit while **loaded in or on**, or conveyed by, an **insured auto**. **Towed property** also means property when it is moved from the place where **you** accept it for movement by or onto **your insured auto** and after it is moved from **your insured auto** to the place where it is finally delivered by **you**. **Towed property** includes a towed **auto** or **watercraft**.

6.  "**Watercraft**" means any craft, boat, vessel, or ship designed to transport persons or property by water.

71

7. **Work you performed** includes:
   a. Work that someone performed on **your** behalf; and
   b. The providing of, or the failure to provide, warnings or instructions.

## ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured** under this endorsement:
1. All expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. The premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
3. Reasonable expenses incurred by that **insured** at **our** request, including loss of earnings up to $250 per day;
4. All costs taxed against the **insured** in any lawsuit against that **insured we** defend; and
5. Interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

## EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED.

1. The On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages under this endorsement do not apply to any of the following:
   a. Liability resulting from any contract or agreement by which the **insured** accepts responsibility for **loss**. This exclusion does not apply to an agreement that is an **insured contract** that was executed prior to the occurrence of any **property damage**;
   b. **Loss** due to theft or conversion caused in any way by **you** or **your** employees, partners, members, directors, or shareholders;
   c. Defective parts or materials;
   d. Faulty **work you performed**;
   e. **Loss** to any of the following:
      (i) Tape decks or other sound-reproducing equipment unless permanently installed in a **customer's auto**;
      (ii) Tapes, records, or other sound-reproducing devices designed to be used with sound-reproducing equipment;

72

078

(iii) Sound-receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **customer's auto** manufacturer for the installation of a radio; or

(iv) Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;

f. **Loss** caused by:
   (i) War, including undeclared or civil war;
   (ii) Warlike action by a military force, including any action to hinder or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents;
   (iii) Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these; or
   (iv) Nuclear reaction or radioactive contamination.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**;

g. **Loss** caused by strikes, lockouts, riots, civil commotion, or disorder; or

h. **Loss** due to inherent vice, delay, loss of profit, loss of market, loss of market value, or loss of use.

2. On-Hook Towing Physical Damage Legal Liability Coverage does not apply to:

   a. **Loss** to tarpaulins, tools, repair equipment, or materials and equipment for loading or unloading, which are carried in or on the **insured auto**;

   b. **Loss** to any **towed property** while it is in the custody of anyone other than an **insured**;

   c. **Loss** to objects of art, including paintings and statuary;

   d. **Loss** to jewelry; precious or semi-precious stones; gold, silver, platinum, or other precious metals or alloys;

   e. **Loss** to live animals;

   f. **Loss** to papers of any kind, including, but not limited to, money, securities, accounts, bills, currency, food stamps, notes, tickets, any other evidences of debt, passports, deeds, mechanical drawings, blueprints, manuscripts, or exhibits;

   g. Debris removal, including extraction of pollutants from land or water; or removal, restoration, or replacement of polluted land or water;

   h. **Loss** caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property;

   i. **Loss** to contraband or property in the course of illegal transportation or trade;

   j. **Loss** to property caused by contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; any quality, fault, or weakness in the property that causes it to damage or destroy itself; or humidity, dampness, dryness, or changes in or extremes of temperature;

   k. **Loss** caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of **pollutants**;

73

079

l. **Loss** caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by an **insured**, anyone to whom **you** entrust the **towed property**, or anyone who has an interest in the property;

m. **Loss** caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense;

n. **Loss** caused by the explosion of explosives; or

o. **Loss** to computers and electronic goods, including, but not limited to, computer hardware and component parts, televisions, DVD players, stereo or other sound reproduction equipment, or any other electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to store or play back recorded media.

## LIMITS OF LIABILITY

1. **On-Hook Towing Physical Damage Legal Liability Coverage.**
   Regardless of the number, amount, or units of **towed property** or **insured autos**, **insureds**, premiums paid, claims made or lawsuits brought, the most **we** will pay for each **loss** is the aggregate amount of damages to all **towed property** while being **loaded in or on** or conveyed by one **insured auto**, not to exceed the limit of liability shown on the **declarations page** for this "On-Hook Legal Liability" coverage.

   The most **we** will pay for **loss** to any **towed property** is the least of the following amounts:
   a. The actual cash value of the damaged or stolen property at the time of **loss**;
   b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
   c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

2. **Garagekeepers Storage Location Physical Damage Legal Liability Coverage.**
   Regardless of the number of **customer's autos** or **insured autos**, **insureds**, premiums paid, claims made, or lawsuits brought, the most **we** will pay for each **loss** at each location is the "Garagekeepers Legal Liability" coverage limit shown on the **declarations page** for that location.

   The most **we** will pay for a **loss** to any one **customer's auto** or all **customer's auto** equipment is the least of the following amounts:
   a. The actual cash value of the damaged or stolen property at the time of **loss**;
   b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
   c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

If the repair or replacement results in better than like kind and quality, **we will** not pay for the amount of the betterment.

An adjustment for depreciation or physical condition will be made in determining actual cash value in the event of a total loss.

In the event of payment of actual cash value for a total loss, **we** are entitled to all salvage, or credit for salvage, resulting from such **loss**.

3. **Deductibles.**

   For each **loss** that qualifies for coverage under the On-Hook Towing Physical Damage Legal Liability Coverage, the deductible shown on the **declarations page** will be applied.

   For each **loss** that qualifies for coverage under the Garagekeepers Storage Location Physical Damage Legal Liability Coverage, the "Each auto" deductible shown on the **declarations page** will be applied separately to each **customer's auto** or **towed property** sustaining **loss** as a result of a single **loss** event. The maximum aggregate deductible applied for a single **loss** event will not exceed the "Each occurrence" deductible shown on the **declarations page**.

   If **we** pay all or any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form Z439 (02/19)

## NON-OWNED TRAILER PHYSICAL DAMAGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Non-Owned Trailer Physical Damage Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession.

**We** will pay for a **loss** to the non-owned **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:

a. Collision Coverage. For **loss** caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.
b. Comprehensive Coverage. For any **loss** except one caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit;
c. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;
e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and
f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

The following definition applies to this endorsement only:

"**Trailer**", when used in this endorsement, includes a shipping container.

## EXCLUSIONS

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   (i) Nuclear Hazard.

76

082

(1) The explosion of any weapon employing atomic fission or fusion; or
        (2) Nuclear reaction or radiation, or radioactive contamination, however
            caused.
    (ii) War or Military Action.
        (1) War, including undeclared or civil war;
        (2) Warlike action by a military force, including action in hindering or
            defending against an actual or expected attack, by any government,
            sovereign, or other authority using military personnel or agents; or
        (3) Insurrection, rebellion, revolution, usurped power, or action taken by a
            governmental authority in hindering or defending against any of these.
b. **We** will not pay for loss of use.
c. **We** will not pay for **loss** caused by, or resulting from, any of the following un-
   less caused by another **loss** that is covered by this insurance;
    (i) Wear and tear, freezing, mechanical or electrical breakdown, or struc-
        tural failure caused by material fatigue, decomposition, or corrosion.
    (ii) Blowouts, punctures, or other road damage to tires.

## LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following
amounts minus any applicable deductible shown on the **declarations page**:
a. The actual cash value of the damaged or stolen property at the time of the **loss**;
b. The amount necessary to replace the stolen or damaged property with other
   of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condition; or
d. The applicable Limit of Liability for the property as shown on the **declara-
   tions page**.

A single deductible will be applied to any **loss**. In the event there are different de-
ductible amounts applicable to the **loss**, the higher deductible will be applied. In all
events, the deductible will be applied against the limit of liability. If a **loss** involves
another coverage added by endorsement to the policy, only one deductible will apply
to the entire **loss** event. No deductible will apply to payments made under the Ad-
ditional Payments section for expenses necessary to return a stolen **trailer** to **you**.

## OTHER INSURANCE

The insurance provided for a **loss** to a non-owned **trailer** is primary.

If coverage under more than one policy applies on the same basis, **we** will pay
only **our** proportionate share. **Our** proportionate share is the proportion that the
Limit of Liability of this policy bears to the total of the limits of all the Coverage
Forms and policies covering on the same basis.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z442 (02/19)

## ANY AUTOMOBILE LEGAL LIABILITY COVERAGE ENDORSEMENT

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## CHANGES TO PART I—LIABILITY TO OTHERS

I.  The following changes are made to the Additional Definitions Used in This Part Only section:

   A.  The definition of "**insured auto**" is modified to include:

      1.  **Hired autos**;
      2.  **Non-owned autos**; and
      3.  Any other **autos** owned by **you**:
         a.  only while being used in the conduct of **your** business; and
         b.  that do not qualify as either **hired autos** or as **non-owned autos**.

      However, this modification to the definition of **insured auto** does not apply to any **auto** acquired prior to the current policy period. But, for any type of **auto** that **you** acquire during the current policy period, this modification extends coverage to that **auto** during the remainder of the policy period.

   B.  The following definitions are added:

      1.  "**Hired auto**" means an **auto**:
         a.  **you** lease, hire, rent or borrow; or
         b.  **your employee** leases, hires or rents:
            i.   under a contract in that individual **employee's** name;
            ii.  at **your** direction and with your express permission; and
            iii. only while being used in the conduct of **your** business.
         However, this does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.

      2.  "**Non-owned auto**" means an **auto**:
         a.  that **you** do not own;
         b.  that is not a **hired auto**; and

<div align="center">78</div>

084

c. that is being used by **you** in connection with **your** business. This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

II. The first paragraph under the Limit of Liability section is deleted and replaced by the following:

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown on the **declarations page** for the coverage provided by this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

086





1781 FL 0219

087

Form Z434 FL (02/19)

## MOTOR TRUCK CARGO LEGAL LIABILITY COVERAGE ENDORSEMENT

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT—LOSS TO COVERED PROPERTY

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written: bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:
1.    while **in due course of transit** in, on, or attached to an **insured auto**; or
2     during **loading or unloading**.
Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this **covered property** coverage has been exhausted by payment of judgments or settlements.

### INSURING AGREEMENT—LOSS TO BUSINESS EQUIPMENT

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **business equipment**. For this coverage to apply, the **business equipment** must, at the time of **loss**, be in **your** exclusive physical custody and control. Coverage applies for **loss** to **business equipment** only if the **loss** is caused by a **covered peril**.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for **business equipment** coverage has been exhausted by payment of judgments or settlements.

088

# ADDITIONAL DEFINITIONS

The following additional definitions apply only to Motor Truck Cargo Legal Liability Coverage, as set forth in this endorsement, and any endorsements thereto that solely pertain to this coverage, whenever the defined term appears therein in boldface type, whether in the singular, plural, or possessive:

1. "**Business equipment**" means computer and related computer hardware, used exclusively in the management of **your** business, that **you** own or that is leased or loaned to **you**. **Business equipment** does not include computer, cell phone, smart phone, or any other electronic equipment, used or intended to be used for personal non-business use.

2. "**Covered peril**" means any external risks of direct physical **loss** to **covered property** or **business equipment**, except for those listed in a. through m. below as Excluded Perils.

   **Excluded Perils:** Please read the following list of excluded perils careful- ly. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. **We** will not pay for any **losses** to **covered property** or **business equipment** caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

   a. **Civil Authority**
      Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property. However, **we** will pay for **loss** or damage caused by or resulting from acts of destruction ordered by any governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this endorsement.

   b. **Nuclear Hazard, Pollutants**
      (i) Any weapon employing atomic fission or fusion; or
      (ii) Nuclear reaction or radiation, or radioactive contamination from any other cause. But **we** will pay for direct **loss** caused by resulting fire if the fire would be covered under this endorsement.
      (iii) The release, discharge, seepage, migration, dispersal, or escape of **pollutants**, unless the release, discharge, seepage, migration, disper- sal, or escape is caused by a **specified peril**.

   c. **War, Civil Commotion**
      (i) **War**, including undeclared or civil war;
      (ii) Warlike action by a military force, including action in hindering or de- fending against an actual or expected attack, by any government, sov- ereign, or other authority using military personnel or agents;

2

089

(iii) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority to hinder or defend against any of these; or

(iv) Strikers, locked-out workmen, or persons taking part in labor disturbances or riots, or civil commotions.

d. **Inherent Vice**

Deterioration; wear and tear; obsolescence; hidden or latent defect; gradual decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the covered property or **business equipment** that causes it to damage or destroy itself.

e. **Criminal, Fraudulent, or Dishonest Acts**

Criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another, whether or not such acts occurred during regular hours of employment, by:

(i) **you**;

(ii) **your** partners, officers, directors, trustees, or joint ventures;

(iii) others to whom **you**, **your** partners, officers, directors, trustees, or joint ventures entrust the property;

(iv) others who have an interest in the property; or

(v) the employees or agents of any party specified in (i) through (iv) above.

This Excluded Peril does not apply to acts of destruction by **your** employees, but **we** will not pay for theft by employees.

f. **Consequential Loss**

Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss**, to **covered property** or **business equipment**.

g. **Wetness**, **Breakdown, Temperature, Humidity**

(i) Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate component parts, or heating equipment installed in a cargo component; or

(ii) Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to an **insured auto**.

However, this Excluded Peril does not apply to **loss** caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

h. **Voluntary Parting, Nondelivery, Mysterious Disappearance**

(i) Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;

(ii) Nondelivery or misdelivery; or

(iii) Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.

i. Fines, Penalties, and Costs

3

090

any costs, fines, punitive damages, assessments, attorney fees, court costs, or other penalties that **you** are required or liable to pay as a result of **your** violation of any law or regulation, or as a result of the violation of any law or regulation relating to any delay in the payment, denial, or settlement of any claim.

j. **Pre-existing Damage**
**We** will not pay for pre-existing damage to any **covered property** or **business equipment**.

With respect to auto haulers, **we** will not pay for pre-existing damage to vehicles being transported by the **insured**. For coverage to apply, the **insured** auto hauler must provide to **us** a signed inspection document attesting to the condition of **covered property** before loading.

k. **Installation Operations**
**Your** operation as rigger, hoister, erector, installer, or dismantler.

l. **Business Equipment Damage**
**We** will not pay for the following damage to **business equipment**:
(i) Wear and tear, any quality in the equipment that causes it to damage or destroy itself, hidden or latent defect, or gradual deterioration;
(ii) Structural, mechanical, or electrical failure or breakdown; or
(iii) Damage caused by maintenance or a software upgrade or download.

m. **Corrosion, Contamination**
**We** will not pay for corrosion, contamination, marring or scratching to any **covered property** or **business equipment** unless it results from damage to an **insured auto**.

3. "**Covered property**" means lawful goods and merchandise of others, except for the items listed in a. through j. below as Excluded Properties. **Covered property** includes **goods and merchandise** owned by **you** while loaded for shipment in or on an **insured auto**, whether or not shipped under a bill of lading or shipping receipt. When used in this endorsement, **goods and merchandise** means products destined for market and/or sale. **Covered property** does not include any equipment **you** own that is being transported between work sites. **Covered property** also does not include **autos you** lease, hire, rent, or borrow.

**Excluded Properties:** Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for **loss** to these types of properties**.**

a. **Art, Jewelry, Metals, Money, Papers**
Objects of art, including paintings and statuary; jewelry, precious or semi-precious stones; precious or semi-precious metals or alloys; money and

4

091

securities of any kind, including monies collected or not collected under a C.O.D., bill of lading, or shipping receipt; food stamps, lottery tickets, notes, money orders, traveler's checks, accounts, bills, deeds, or other evidences of debt; valuable papers of any kind, including passports, manuscripts, mechanical drawings, and blueprints.

b. **Contraband**

Contraband or property in the course of illegal transportation or trade.

c. **Live Animals**

Live animals, birds, or fish, including cattle or poultry, unless death results or is made necessary within 24 hours by a **specified peril**; or unless they escape or stray from the scene of **loss** and cannot be located, but only if the escape or straying is caused by a **specified peril**. **We** do not cover **your** liability for reduction in the market value or downgrading of live animals, birds, or fish due to minor injuries, scrapes, and bruises.

d. **Other Carrier**

Any property while in the physical custody of any other carrier.

e. **Property Not Under Bill of Lading**

Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge. This exclusion does not include poultry cages owned by the shipper while being utilized in the transportation of **covered property**.

f. **Storage**

Any property in or on an **insured auto** after it has remained at any location for more than 72 hours. This includes locations **you** own or use. This exclusion does not apply to delays in transportation outside of **your** control due to severe weather, as long as transport resumes as soon as the weather emergency has ended.

g. **Transporting Vehicles and Equipment**

Any transporting vehicle or conveyance, including its equipment such as tarpaulins and fittings, chains, binders, and intermodal shipping containers, unless specified on a bill of lading.

h. **Explosive or Radioactive Material**

Explosives, ammunition, fireworks, or radioactive material.

i. **Pharmaceuticals, Tobacco, Marijuana Products, Alcohol**

Prescription pharmaceuticals, tobacco products, marijuana products, or alcoholic beverages, other than beer or wine.
Mobile/Modular Homes and Buildings

092

**Mobile/Modular Homes and buildings** whether carried on or attached to the **insured auto**.

4. "**Earned freight charges**" means freight charges from the point of departure to the point of **loss**.

5. "**In due course of transit**" means being shipped from the time **you** assume exclusive physical custody and control of the covered property for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:
   a. the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;
   b. the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;
   c. 72 hours after arrival at destination; or
   d. any other stop that exceeds 72 hours.
   **In due course of transit** includes ordinary and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

6. "Insured auto" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy, and includes **trailers** listed on the declarations page. In addition, as used in this endorsement, **insured auto** means:
   a. Any **auto** specifically described on the **declarations page;**
   a. An additional **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it.
   b. Any replacement **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it.
   c. A **trailer** designed primarily for travel on public roads while it is in due course of transit.
   d. Any temporary substitute auto.

7. "**Loading or unloading**" means the direct physical process of hoisting, lifting, or moving **covered property**:
   a. onto an **insured auto** from the ground or loading docks adjacent to such

093

   b.    off of an **insured auto** to the place where it is finally delivered.

However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading or unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

8.   "**Mobile/Modular Homes and Buildings**" means prefabricated housing units and buildings, factory-built homes and buildings, mobile homes, and modular homes and buildings. The term does not include motor homes or travel trailers designed for use on public roads.

9.   "**Pollutant**" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy. Additionally, as used in this endorsement, it includes electrical or magnetic emissions, whether visible or invisible, and sound emissions.

10.   "**Specified peril**" means:
    a.    fire, lightning, or explosion;
    b.    smoke, but this cause of **loss** does not include smoke from exhaust fumes or gases of the transporting vehicle, agricultural smudging, or industrial operations;
    c.    windstorm or hail, but this cause of **loss** does not include **loss** caused by or resulting from:
      (i)    heat, cold, or change in or extremes of temperature; or
      (ii)    ice (other than hail), snow, or sleet, whether driven by wind or not;
    d.    collision, overturn, or derailment of a transporting conveyance. With respect to live animals, birds, or fish, this cause of **loss** does not include **loss** caused by or resulting from the **insured auto** coming in contact with:
      (i)    the roadbed;
      (ii)    curbing;
      (iii)    rails or ties of railways; or
      (iv)    a stationary object while backing for **loading or unloading** purposes;
    e.    collapse of a bridge, wharf, dock, platform, or culvert;
    f.    stranding, sinking, burning, or collision on any ferry;
    g.    flood, meaning the rising of any natural body of water; and
    h.    theft, but excluding pilferage by **you** or **your** employees, anyone with a financial interest in the cargo or their employees, authorized representatives or anyone else entrusted with the cargo. Theft does not include **loss** caused by or resulting from:
      (i)    wrongful conversion; or
      (ii)    acceptance of counterfeit money, fraudulent post office or express money orders, or checks or promissory notes not paid upon presentation.

    With respect to live animals, birds, or fish, **we** will extend this theft coverage to pay for direct physical **loss** to live animals, birds, or fish caused by theft of:
      (i)    the entire load of live animals, birds, or fish; or

(b) the **insured auto** in or on which the live animals, birds, or fish are loaded.

However, this coverage extension does not apply to the loss of individual animals or less than the entire load of live animals, birds, or fish unless the entire **insured auto** is first stolen.

11. "**Trucker**" means any person, organization, or motor carrier engaged in the business of transporting property for hire.

## ADDITIONAL PAYMENTS

In addition to the applicable limit of liability:

1. **Earned Freight**
   **We** will pay **earned freight charges** that are due to **you** if **you** are unable to collect from others because of a **loss** to **covered property** that is caused by a **covered peril**. The most **we** will pay under this additional coverage for all freight charges in any one **loss** is $10,000.

2. **Removal Expenses**
   a. **We** will pay removal expenses incurred to remove debris of **covered property**, which results from a **loss** caused by a **covered peril** that occurs during the policy period. The term "debris" does not include **pollutants**.
   b. **We** will also pay removal expenses incurred to extract **pollutants** from land or water, if the discharge, dispersal, migration, or release of the **pollutants** is caused by or results from **loss** to **covered property**, and if such **loss** is caused by a **covered peril** during the policy period.
      **We** do not pay for:
      (i) the cost of testing; evaluating; observing; or recording the existence, level, or effects of **pollutants**. However, **we** will pay the cost of testing that is necessary for the extraction of **pollutants** from land or water.
      (ii) any damage to **your insured auto** from **pollutants**.
   c. The most **we** will pay for all removal expenses described in a. or b. above arising out of any one **loss** is $25,000.
   d. The expenses for removal of **covered property** debris and **pollutants** will be paid only if they are reported to **us** in writing within 180 days of the earlier of:
      (i) the date of the direct physical **loss**; or
      (ii) the end of the policy period.

3. **Expenses in Defense or Settlement of Claims**
   **We** will pay, with respect to any claim **we** investigate or settle, or with respect to any lawsuit against any insured **we** defend:
   a. all expenses **we** incur.
   b. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. However, **we** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds.
   c. all reasonable expenses incurred by **you** at **our** request, including actual

095

d. all costs taxed against the insured in any lawsuit against the insured **we** defend.

e. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. This does not apply if **we** have not been given notice of suit or the opportunity to defend an insured. **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

f. interest accruing before entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. **Our** offer to pay that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after **our** offer.

4. **Sue and Labor**

a. **We** will pay the necessary expenses **you** incur to prevent further **loss** to **covered property** if that expense is incurred within a 12-hour period after the **covered peril** occurs.

b. If, in the event of an occurrence, it becomes necessary to move the **covered property** in order to avoid a **loss** to the **covered property**, **we** will pay the reasonable and necessary costs incurred by **you** to move the **covered property** away from the location of the occurrence.

c. The most **we** will pay for the aggregate of all expenses incurred under subparts a. and b. above is $7,500.

## LIMITS OF LIABILITY

1. **Amount of Payment**

a. Subject to subsections 2., 3., and 4. below, in the event of a **loss** to **covered property**, **we** will pay the least of the following:
   (i) **Your** legal liability for the direct physical **loss** to the **covered property**;
   (ii) The declared value of the **covered property** shown in the bill of lading, tariff documents, rate confirmation sheet, shipping receipt, or contract of carriage;
   (iii) For household goods, the amount specified in any advice of coverage, or other document evidencing an agreed valuation for property in transit;
   (iv) The actual cost to the shipper to repair or replace the **covered property** with material of like kind and quality, not including any claim for diminution of value to the **covered property**; or
   (v) The "Cargo" limit shown on the **declarations page**.

b. Regardless of the number of **insured autos** or **trailers** involved, insureds, premiums paid, policies issued by **us**, claims made, or lawsuits brought, the most **we** will pay for **loss** to **covered property** in any one occurrence is the limit of liability shown on the **declarations page** for "Cargo Liability" coverage.

c. With respect to **business equipment**, subject to subsections 2., 3., and 4. below, in the event of a **loss**, **we** will pay the lower of:
   (i) the amount necessary to replace the **business equipment**; or

096

(b) the amount necessary to repair the business equipment.

**We** will not pay the amount necessary to repair or replace **business equipment** unless the equipment has been, or is actually going to be, repaired or replaced. Subject to the limit of liability for this coverage, **we** will pay only the amount **you** are required to spend to repair or replace the **business equipment**.

The most **we** will pay for **loss** to **business equipment** in any one occurrence is the $5,000 limit of liability for this **business equipment** coverage.

2. **Deductible**
For each **loss** to **covered property** that qualifies for coverage under this endorsement, the deductible shown on the **declarations page** for this "Cargo Liability" coverage will be applied to reduce the **loss** payable on the **covered property**. A $250 deductible will apply to each **business equipment loss**. For each **loss** to **business equipment** that qualifies for coverage under this endorsement, the **business equipment** deductible will be applied to reduce the **loss** payable on the **business equipment**.

If there is other **loss** arising out of a single occurrence that applies under this endorsement, or under the associated Commercial Auto Policy, and/or any other endorsement attached thereto, only one deductible will be applied to the aggregate of all **loss** components. The highest deductible applicable to any single coverage implicated in the **loss** will apply.

If **we** pay for any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

3. **Insurable Interest**
**We** will not cover more than **your** insurable interest in any **covered property** or **business equipment**.

4. **Sets or Parts**
   a. Sets
   The **loss** to an article that is part of a set will not be considered a **loss** to the entire set. Therefore, if there is a **loss** to **covered property** or **business equipment** that is part of a set, **we** at **our** option may choose to:
   (a) repair or replace any part to restore the pair or set to its value before the **loss** or damage; or
   (b) pay the difference between the value of the pair or set before and after the **loss** or damage.
   b. Parts
   If **loss** is to a part of **covered property** or **business equipment** that consists of several parts, **we** will pay for only the lost or damaged part.

## DUTIES IN CASE OF A LOSS

The following additional duties apply under this Motor Truck Cargo Legal Liability

Coverage Endorsement

1. You must take all reasonable steps to protect covered property and business equipment at the time of and after a loss to avoid further damage.

2. You must allow us to have all property involved in an accident or loss inspected and appraised before its repair or disposal.

   1. 3. You must give us a copy of the descriptions and schedules from all insurance policies applicable to the **covered property** or **business equipment**, whichever the case may be, that was destroyed or damaged.

4. You must send us a signed, sworn proof of loss containing all the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

5. You must, as often as we reasonably require, submit, and so far as is within your power, cause all other persons interested in the covered property or business equipment, whichever the case may be, and members of their households and employees to submit, to examination under oath by any person we name, and, in connection with any claim made, to produce for examination all books of accounts, uniform bills of lading, shipping receipts, invoices, drivers' log books, and any other documents, at such reasonable time and place as we may designate, and permit extracts and copies thereof to be made.

6. Unless **we** give **our** permission, **you** may not dispose of the carcass(es) of animals, birds, or fish until **we** inspect or examine such carcass(es). However, this clause does not apply if such disposal is required by law or ordinance.

## GENERAL PROVISIONS

1. When used in this endorsement, subsection 3—Other Insurance of the General Provisions section of **your** Commercial Auto Policy is deleted in its entirety and replaced by the following:

   a. **Other Insurance**
      (i) **You** may have other insurance subject to the same terms, conditions, and provisions as the insurance provided by this endorsement. If **you** do, **we** will pay **our** share of the covered **loss**. **Our** share is the proportion that the applicable limit of liability under this endorsement bears to the total of the limits of liability of all policies covering on the same basis.

098

(i) there is other insurance covering the same **loss**, other than that described in paragraph (i) above, **we** will pay only for the amount of the covered **loss** in excess of the amount due from that other insurance, whether **you** can collect on it or not. However, **we** will not pay more than **our** applicable limit of liability.

b. **Insurance Under Two or More Coverages**

If two or more of this endorsement's coverages apply to the same **loss**, **we** will not pay more than the amount of the **loss** as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement, or the limit of liability applicable to the most specific coverage, whichever is less.

2   The following additional General Provisions apply to this Motor Truck Cargo Legal Liability Coverage endorsement:

a. **Payment of Loss**

(i)   A covered **loss** will be payable 20 days after a satisfactory proof of loss is received or a final judgment award has been entered.

**We** may make payment for a **loss** either to **you** or the owner of the property. **We** will not pay the owner more than their financial interest in the property. If **we** make a payment to the owner of the property, this shall be in full satisfaction of any claim by **you** for which such payment has been made.

If a **loss** has been paid or made good by others, **we** will not be liable for any part of the **loss**. Payment for a **loss** is required only if **you** have fully complied with all the terms of this policy.

(ii)  With respect to **covered property**, **we** have the following options:
   (a)  pay the value of the **loss** as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement;
   (b)  pay the cost of repairing or replacing the **covered property**;
   (c)  rebuild, repair, or replace the **covered property** with property of like kind and quality, to the extent practicable, and within a reasonable time; or
   (d)  take all or any part of the damaged property at an agreed value.

(iii) With respect to **business equipment**, **we** will pay the loss as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement.

b. **Abandonment**

**We** may keep all or part of the property at the agreed or appraised value, but **you** may not abandon any property to **us** without **our** written consent.

099

c. **Conformity with Statute**

When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

**Recovered Property**

If **you** or **we** recover any **covered property** or **business equipment** for which **we** have made payment under this policy, **you** or **we** will promptly notify the other of the recovery. At **your** option, the property will be returned to or retained by **you** or it will become **our** property. If **you** keep the property, **you** must return to **us** the amount **we** paid to **you** for the **covered property** or **business equipment**, whichever the case may be. **We** will pay recovery expenses and the expenses to repair the recovered **covered property** and **business equipment**, subject to the limit of liability.

If **we** have already paid **you** the **loss** amount at the time of any salvage or recovery, the amount **you** receive for the recovered **covered property** will accrue entirely to **our** benefit until **you** have paid any amounts owed to **us** as a result of the adjustment to the **loss** amount.

d. **Salvage**

Any recovery of salvage on a **loss** will accrue entirely to **our** benefit until the sum **we** paid has been replaced. If **our** benefit of salvage recovery exceeds the sum that **we** paid, **we** will return the difference to **you**, less any salvage recovery expenses.

e. **Policy Period and Territory**

Coverage under this endorsement applies only to **losses** that occur during the policy period shown on the **declarations page** and which occur within the United States or Canada.

f. **Coverage Required by Filings**

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:

(i)   **we** are required to pay any judgment entered against **you**; or

(ii)  **we** agree to settle a claim or lawsuit;

arising out of a **loss** that is covered solely because of the existence of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or any applicable law. If any payment is based solely on the existence of such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

g. **No Benefit to Bailee**

No person or organization other than **you**, having custody of **covered property** or **business equipment**, will benefit from this insurance.

100

**Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom **we** make payment under this endorsement has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment. That person or organization must do everything necessary to secure **our** rights and must do nothing after **loss** to impair them. But **you** may waive **your** rights against another party in writing:

(i) Prior to a **loss** to the **covered property** or **business equipment**.
(ii) After a **loss** to the **covered property** or **business equipment**, but only if, at the time of **loss**, that party is one of the following:
   (a) someone insured by this insurance; or
   (b) a business firm:
       (1) owned or controlled by **you**; or
       (2) that owns or controls **you**.

i. **Legal Action Against Us**

No one may bring a legal action against **us** under this endorsement unless:

(i) there has been full compliance with all the terms of this policy; and
(ii) the action is brought within five years.

j. **Premiums**

The first named insured shown on the **declarations page**:

(i) is responsible for the payment of all premiums; and
(ii) will be the payee for any return premiums **we** pay.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UN-CHANGED.**

101

Progressive
PO Box 94903
Cleveland, OH 44101

**PROGRESSIVE**
COMMERCIAL

August 11, 2020
Policy number: 02481600-0

HARRY'S TRUCK SERVICES LLC
201 BELVOIR DR
DAVENPORT, FL 33837

Enclosed is the MCS90.

Please retain this copy for your records.

If this endorsement subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, you are required to inform us of all vehicles that are commercially owned or operated by the insured and to list them on your policy. Please review the current policy declaration page and inform us promptly of any additional vehicles that need to be listed. If you acquire (or acquire the services of) any additional commercially owned or operated vehicles in the future, you must promptly notify us of each such additional vehicle. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

Thank you,
Commercial Auto
Permit Issuance and Verification
1-800-444-4487

Form COVERLTR (06/04)

102

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

**U.S. Department
of Transportation**
Federal Motor Carrier
Safety Administration

OMB No: 2126-0008
Expiration: 01/31/2020
Form MCS-90 Revised 01/05/2017

USDOT Number: 3023356    Date Received: _____

## FORM MCS-90 ENDORSEMENT FOR
## MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
## UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to (Motor Carrier name) HARRY'S TRUCK SERVICES LLC of (Motor Carrier state or province) 201 BELVOIR DR, DAVENPORT, FL 33837-0000
Dated at MAYFIELD VILLAGE, OH 44143 on this 11th day of August, 2020
Amending Policy Number: CA 02481600-0 Effective Date: 08/10/2020
Name of Insurance Company: Progressive Express Ins

Countersigned by: _____
authorized company representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X] This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

(continued on next page)

Form MCS-90 Page 1 of 2

103

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

## SCHEDULE OF LIMITS - PUBLIC LIABILITY

| Type of Carriage | Commodity Transported | January 1, 1985 |
|---|---|---|
| (1) For-hire (In interstate or foreign commerce with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous). | $   750,000 |
| (2) For-hire and Private (In interstate, foreign, or intrastate commerce with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials; Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

# Exhibit B

# Rental Agreement/Cover Sheet



**24/7 Roadside Assistance:**
**1-800-526-0798**

| | | | |
|---|---|---|---|
| **Rental Agreement #:76266378** | | | COMMERCIAL LOCAL |
| Created by: | L.BROCK | **Pick Up Date:** | **08/08/20 12:37 PM** |
| Completed by: | J.ALEXANDER | **Expected Drop-Off:** | **08/15/20 12:37 PM** |
| Entered At: | 0030-10 | **Actual Drop-Off:** | **08/15/20 12:37 PM** |
| **Status:** | **REWRITTEN** | **End Bill Date** | **08/15/20 12:37 PM** |
| | | Batch: | 8674 on 08/15/20 |

**CUSTOMER INFORMATION**

Acct: 3AH1W200 - 0030
HARRY'S TRUCK SERVICES LLC
201 BELVOIR DR
DAVENPORT, FL  33837-8204  USA
Day (407) 953-7595
NRA #: 5970
USDOT #: 3023356

**PICK UP/DROP OFF LOCATION**

PENSKE ATLANTA WEST FULT (0030-10)
4605 FULTON IND BLVD SW
ATLANTA, GA  30336-2001 USA
Voice (404) 691-3020
Fax (404) 691-4510

---

**DRIVER NAME(S):** HARRY PERALTA

**TRAVEL SCOPE:** Interstate

This lessor cooperates with all Federal, State, and local law enforcement officials nationwide to provide the identity of customers who operate this rental CMV

---

**UNIT INFORMATION**

| | | |
|---|---|---|
| **Unit #:313888** | Max. Payload: 9,550 lbs. | Rented With Damage: NO |
| 2026 - 26FT SAD MEDIUM VAN | Height: 13 ft.0 in. | Returned With Damage: NO |
| License #: 36575UA | | **Mileage Out: 238,136** |
| License State: VA | | **Mileage In: 239,773** |
| License Exp: 08/31/2022 | | **Diesel Fuel Out: FULL** |
| Owning Location: 0707-10 | | **Diesel Fuel In: FULL** |

Customer shall be responsible for all tolls incurred in the operation of the Vehicle, whether or not the provided transponder is used.

NO HAZARDOUS MATERIAL BEING TRANSPORTED

---

**OPTIONAL PROTECTION PLANS**

Limited Damage Waiver/LDW $1000 Responsibility       *ACCEPTED*
Rates: $455.00/Month       $105.00/Week       $15.00/Day

Limited Damage Waiver/LDW $5000 Responsibility       *DECLINED*
Liability Coverage/LIABILITY ACCIDENT INSURANCE       *PENSKE PROVIDES*
Rates: $303.33/Month       $70.00/Week       $10.00/Day

Supplemental Liability       *DECLINED*

THIS CONTRACT OFFERS, FOR ADDITIONAL CHARGE OPTIONAL VEHICLE PROTECTION TO COVER YOUR FINANCIAL RESPONSIBILITY FOR DAMAGE OR LOSS TO THE RENTAL VEHICLE. THE PURCHASE OF OPTIONAL VEHICLE PROTECTION IS OPTIONAL AND MAY BE DECLINED. YOU ARE ADVISED TO CAREFULLY CONSIDER WHETHER TO PURCHASE THIS PROTECTION IF YOU HAVE A RENTAL VEHICLE COLLISION COVERAGE PROVIDED BY YOUR CREDIT CARD OR AUTOMOBILE INSURANCE POLICY. BEFORE DECIDING WHETHER TO PURCHASE OPTIONAL VEHICLE PROTECTION, YOU MAY WISH TO DETERMINE WHETHER YOUR CREDIT CARD OR VEHICLE INSURANCE AFFORDS YOU COVERAGE FOR DAMAGE TO THE RENTAL VEHICLE AND THE AMOUNT OF DEDUCTIBLE UNDER SUCH COVERAGE.

CUSTOMER COPY



**24/7 Roadside Assistance:**
**1-800-526-0798**

# Rental Agreement/Cover Sheet

**Rental Agreement #:76266378**                    COMMERCIAL LOCAL

| | | | |
|---|---|---|---|
| Created by: | L.BROCK | **Pick Up Date:** | **08/08/20 12:37 PM** |
| Completed by: | J.ALEXANDER | **Expected Drop-Off:** | **08/15/20 12:37 PM** |
| Entered At: | 0030-10 | **Actual Drop-Off:** | **08/15/20 12:37 PM** |
| Status: | **REWRITTEN** | **End Bill Date** | **08/15/20 12:37 PM** |
| Customer Name: | HARRY'S TRUCK SERVICES LLC | Batch: | 8674 on 08/15/20 |
| Created On: | 08/08/20 04:01 PM | Changed On: | 08/15/20 02:40 PM |

## BILLING INFORMATION

Invoice #:                    PO #:                    Billing Cycle: Weekly

Bill Start Date:08/08/20 12:37 PM     Next Billing: 08/15/20

**Remit To: PENSKE TRUCK LEASING CO.,L.P. - P.O.BOX 532658 ATLANTA, GA 30353-2658  USA**

## REWRITE INFORMATION

| | | |
|---|---|---|
| Original: 75649609   (1) | Original Date Out: 06/27/20 12:37 PM | |
| Original Expected Return: 07/04/20 | Previous: 76161411   (6) | Current: 76266378   (7) |

## CHARGES

| Type | Quantity | Unit of Meas | Rate | Charge |
|---|---|---|---|---|
| Unit #:313888 | | | | |
| | 1 | Week | $440.00 | **$440.00** |
| Mileage        Out: 238,136   In: 239,773 | 1,637 | Miles | $0.1300 | **$212.81** |
| Ldw $1000 Responsibility | 1 | Week | $105.00 | **$105.00** |
| Liability Accident Insurance | 1 | Week | $70.00 | **$70.00** |
| Vehicle Licensing Recovery Fee | 1 Week @ $24.50 | | | **$24.50** |
| environmental fee | 1 Week @ $21.00 | | | **$21.00** |
| | | | **SUBTOTAL:** | **$873.31** |

## TAXES

| | |
|---|---|
| GA SALES TAX | **$48.88** |
| **TOTAL DUE:** | **$922.19** |

## PAYMENTS AND REFUNDS

| Pay Type | Trans | Date | Card # | Approval Code | |
|---|---|---|---|---|---|
| VI | PYMT | 08/15/2020 | xxxxxxxxxxxx4708 | 020112 on 08/08/2020 | ($798.82) |
| VI | PYMT | 08/15/2020 | xxxxxxxxxxxx4708 | 064010 on 08/15/2020 | ($123.37) |
| | | | | **PAYMENT:** | **($922.19)** |
| | | | | **NET DUE:** | **$0.00** |

COPY



CUSTOMER COPY

# Rental Agreement Cover Sheet

**24/7 Roadside Assistance:**
**1-800-526-0798**

**Rental Agreement #:76266378** COMMERCIAL LOCAL

| | | | |
|---|---|---|---|
| Created by: | L.BROCK | **Pick Up Date:** | **08/08/20 12:37 PM** |
| Completed by: | J.ALEXANDER | **Expected Drop-Off:** | **08/15/20 12:37 PM** |
| Entered At: | 0030-10 | **Actual Drop-Off:** | **08/15/20 12:37 PM** |
| **Status:** | **REWRITTEN** | **End Bill Date** | **08/15/20 12:37 PM** |
| | | Batch: | 8674 on 08/15/20 |

COPY

Penske respects your privacy. Penske collects contact, driver's license, and payment information from Customers at time of rental, and shares this information with service providers as needed to facilitate the rental process, perform watch list checks, and process payments. You may have the right to request copies or deletion of the personal information we collect about you under certain local privacy laws. For details on how Penske and its trusted partners manage your personal information, provide you with choices regarding your personal information, and a statement of your privacy rights, see our full Privacy Policy at www.gopenske.com/privacy. You may also contact us at privacy@penske.com or (844) 967-0109.

Customer acknowledges that Customer has read, or been given an opportunity to read, the Rental Agreement, including this Cover Sheet, the General Terms and Conditions, as well as any attachments hereto and agrees to be fully bound by its terms. Before deciding whether to purchase the optional limited damage waiver, you may wish to determine whether your own automobile insurance already affords you coverage for damage to the rental vehicle. To the extent the Customer had purchased Limited Damage Waiver coverage, Customer acknowledges reading, understanding, and agreeing with the disclosures, exclusions, and terms and conditions applicable to Limited Damage Waiver as set forth in Attachment D to the Rental Agreement.

By: ______________________________

Customer/Authorized Signatory

