UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE EXPRESS INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-5589 |
| v. | ) ) | Hon. Steven C. Seeger |
| HARRY'S TRUCK SERVICE, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

District courts must stand guard over their own jurisdiction, and make sure that parties don't put cases in front of them that they lack the power to hear. Courts must keep the doors of the federal courthouse closed to cases that don't belong. This case is a good example.

Plaintiff Progressive Express Insurance Co. issued a commercial auto insurance policy to Defendant Harry's Truck Service, LLC. While that policy was in effect, a semi-truck rented by Harry's was involved in a seven-car pileup. Progressive believed that the policy did not provide coverage for the accident. So, it sued Harry's, and a host of other Defendants, for a declaratory judgment about a lack of coverage.

Progressive's four-count complaint asserts state-law causes of action. And the parties are not completely diverse. So, the only proffered basis for subject matter jurisdiction is the narrow exception for federal questions embedded in state-law causes of action. This Court had its doubts that this case falls within that exception, so it ordered Progressive to show cause why the case should not be dismissed for lack of subject matter jurisdiction.

For the following reasons, the Court sua sponte dismisses the complaint without prejudice for lack of subject matter jurisdiction.

## Background

This case is about a seven-car pileup on Interstate 90 in Chicago. *See* Third Am. Cplt., at ¶ 1 (Dckt. No. 69). The crash left few involved unscathed. All seven cars were damaged, several of the drivers and passengers suffered physical injuries, and one person died. *Id.* at ¶¶ 32–34.

One of the cars involved in the crash was a 2016 Freightliner semi-truck driven by Defendant Reny Ramirez Orts. *Id.* at ¶¶ 6, 30. Orts was employed by Defendant Harry's Truck Service, LLC, who had rented the semi "for purposes of making deliveries of household goods in the area in and around Chicago, Illinois." *Id.* at ¶ 29. According to the complaint, "[a]t the time of the collision, Orts was not engaged in making a delivery or a pick-up as part of Orts' employment with Harry's." *Id.* at ¶ 35. Instead, "Orts was driving from the home of a friend where Orts had been socializing, to the local hotel where Orts slept while working for Harry's in Chicago." *Id.*

Harry's had a commercial auto insurance policy from Plaintiff Progressive Express Insurance Co. *Id.* at ¶ 20. The policy "in effect at the time of the collision lists three covered vehicles." *Id.* at ¶ 22. The 2016 Freightliner semi-truck was not one of the covered vehicles listed in the policy. *Id.* at ¶ 23. Instead, Harry's secured a separate "policy of insurance specifically covering the [rented] 2016 Freightliner." *Id.* at ¶¶ 25–26.

The insurance policy for the Freightliner included a provision called an MCS-90 endorsement. *Id.* at ¶ 37. The endorsement is an outgrowth of federal regulations. "Federal regulations require motor carriers to have insurance for the protection of the public, which may

be injured by collisions on the highway." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, LLC*, 615 F.3d 790, 791 (7th Cir. 2010). "To satisfy this insurance requirement, most interstate trucking companies obtain a specific endorsement to one or more of their insurance policies – the MCS-90 endorsement – which guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (en banc).

Progressive does not believe that its insurance policy with Harry's, including the MCS-90 endorsement, provides coverage for damages from the crash. So, it filed a four-count complaint seeking a declaratory judgment that it doesn't owe the Defendants any money for claims stemming from the car crash on I-90. *See* Cplt. (Dckt. No. 1).

Count I of the third amended complaint (the current iteration) seeks a declaration that the MCS-90 endorsement included in Progressive's policy with Harry's does not apply to this crash. *See* Third Am. Cplt., at ¶¶ 36–39 (Dckt. No. 69). Progressive alleges that "at the time of the collision the 2016 Freightliner was not being used in interstate commerce. Rather, at the time of the collision, the 2016 Freightliner was being used by Orts as a means of transporting himself from a night of socializing at the home of a friend to the local hotel where Orts slept while working for Harry's in the Chicago area." *Id.* at ¶ 38.

Counts II–IV allege that the insurance policy does not provide coverage for other reasons. Count II seeks a declaration that the rented Freightliner is not an "insured auto" under the policy. *Id.* at ¶¶ 40–43. Count III seeks a declaration that the rented Freightliner is not a "temporary substitute" under the policy. *Id.* at ¶¶ 44–47. And Count IV seeks a declaration that Defendant J.B. Hunt Transportation Service, Inc. is not entitled to coverage as an "additional insured." *Id.* at ¶¶ 48–53.

3

When the complaint first came in the door, this Court had some questions about whether subject matter jurisdiction existed. *See* 11/4/22 Order (Dckt. No. 9). Plaintiff's first amended complaint alleged that this Court had both diversity and federal question jurisdiction. *See* First Am. Cplt., at ¶ 2 (Dckt. No. 8).[1] This Court had a few doubts.

For starters, despite Plaintiff alleging that federal question jurisdiction existed, none of Plaintiff's claims asserted a federal cause of action. Instead, all four counts were state-law claims based on the insurance contract. So, federal question jurisdiction would need to rest on the narrow exception in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). *See* 11/4/22 Order (Dckt. No. 9). This Court was not sure that *Grable* applied based on the amended complaint's jurisdictional allegations alone.

The basis for diversity jurisdiction was "hazy," too. *Id.* "The list of Defendants includes an LLC, an LP, a company, a corporation, and a bunch of natural persons. For jurisdictional purposes, they stand on different footings." *Id.* The complaint did not do enough to pin down the citizenship of each Defendant – not "by a long shot." *Id.* "For example, the complaint brings a claim against an LLC, adding that its principal place of business is Florida, but its principal place of business makes no difference." *Id.*

So, the Court determined that the jurisdictional allegations were insufficient, and struck the amended complaint. *Id.*

Progressive then amended its complaint two more times. *See* Second Am. Cplt. (Dckt. No. 11); Third Am. Cplt. (Dckt. No. 69). The third amended complaint does not allege that this Court has diversity jurisdiction. Instead, the complaint relies on federal question jurisdiction

---

[1] Plaintiff filed a first amended complaint eight days after it filed its original complaint. *See* 10/20/22 Order (Dckt. No. 7). So, Plaintiff could file the first amended complaint "as a matter of course" under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.

based on the MCS-90 endorsement. "This Court has federal question jurisdiction as to Count I based on the application of a MCS-90 Endorsement which Progressive issued to Harry's Truck Services, LLC pursuant to the Motor Carrier Act of 1980." *See* Third Am. Cplt., at ¶ 2. Progressive alleges that the Court has supplemental jurisdiction over the remaining state-law claims. *Id.* at ¶ 3.

This Court continued to have questions about jurisdiction after reviewing the third amended complaint. For one, the Court noticed that the third amended complaint did not provide a basis for diversity jurisdiction. *See* 4/14/23 Order (Dckt. No. 94). So, the Court directed Progressive, as the party invoking the Court's jurisdiction, to clarify its position about diversity jurisdiction. *Id.* The Court wanted to pin down whether Progressive was continuing to invoke diversity jurisdiction, or if Progressive had abandoned that would-be jurisdictional foothold.

Progressive responded by confirming that federal question jurisdiction was the sole basis for this Court's subject matter jurisdiction. *See* Supp. Jurisdictional Statement, at ¶ 3 (Dckt. No. 98). So, diversity jurisdiction was off the table. Progressive reiterated that "this Court has federal question jurisdiction as to Count I based on the application of an MCS-90 Endorsement which Progressive issued to Harry's Truck Services, LLC pursuant to the Motor Carrier Act of 1980." *Id.* at ¶ 4.

Diversity jurisdiction was out of the picture, but the Court continued to have questions about whether it had federal question jurisdiction. The Court acknowledged that the MCS-90 endorsement *might* confer federal question jurisdiction under *Grable* as a federal issue embedded in a state-law cause of action. *See* 6/28/23 Order (Dckt. No. 104). But the third amended complaint had not alleged enough to establish jurisdiction. When a complaint invokes federal question jurisdiction, but does not rely on a federal cause of action, "[t]he mere presence of a

5

federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

After digging into the caselaw, this Court found a few cases that discussed whether an "MCS-90 endorsement is enough to give rise to federal question jurisdiction." *Id.* Progressive flagged none of this caselaw (or any other caselaw), "let alone discussed it" in its earlier jurisdictional filing. *Id.* "As things stand, the submission by Progressive is too terse and cursory to establish something as important as a foundation for subject matter jurisdiction. If Progressive wants to stay in federal court, then it is incumbent on Progressive to do more to establish that this case belongs here and can stay. Invoking MCS-90, without more, is not enough." *Id.*

So, to pin down the jurisdictional issue, the Court ordered Progressive to show cause why the case should not be dismissed for lack of subject matter jurisdiction. *Id.* Progressive then filed a second supplemental jurisdictional statement. *See* Second Supp. Jurisdictional Statement (Dckt. No. 107). Progressive contends that this Court has jurisdiction under the narrow path outlined in *Grable* for federal issues embedded in state-law causes of action.

**Analysis**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *United States v. Wahi*, 850 F.3d 296, 299 (7th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

To ensure that courts stay in their Article III lane, district courts must assess whether they have jurisdiction, even if the parties do not raise it. "Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *See Craig v. Ont. Corp.*, 543 F.3d

6

872, 875 (7th Cir. 2008). "In every case, the first task of a federal court is to ensure that it has jurisdiction." *Gen. III, LLC v. City of Chicago*, 2021 WL 2939982, at *2 (N.D. Ill. 2021) (Dow, J.). Without jurisdiction, a court does not have power to go anywhere.

The Federal Rules reflect this requirement. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3).

Progressive contends that this Court has federal question jurisdiction under 28 U.S.C. § 1331. Specifically, it believes that federal question jurisdiction exists under the Supreme Court's decision in *Grable*. *See* Second Supp. Jurisdictional Statement, at ¶ 13 (Dckt. No. 107).

Under *Grable*, "[a] case arises under federal law within the meaning of § 1331" if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690–91 (2006) (cleaned up). This route to establishing federal question jurisdiction is the "so-called . . . 'embedded' federal question." *Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers*, 966 F.3d 661, 669 (7th Cir. 2020). That is, federal question jurisdiction exists if a federal question is embedded in an otherwise state-law cause of action. A federal court can hear a case if a federal question is baked into the middle of the claim.

In these cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14).

Embedded federal question cases are rare. The Supreme Court has termed them a "special and small category" of cases. *Id.* (quoting *McVeigh*, 547 U.S. at 699). This category of

cases "is exceedingly slim." *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 963 (7th Cir. 2021); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (describing embedded federal questions as a "slim category"). The "existence of a federal issue" embedded in a state-law claim "rarely allows removal." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014); *see also Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 860 (7th Cir. 2018) ("Federal jurisdiction is rarely established on this basis."); *Praschak v. Kmart Corp.*, 922 F. Supp. 2d 710, 713 (N.D. Ill. 2013) (noting that embedded federal question jurisdiction is a "rare case"). Words like "special," "small," "slim," and "rare" don't leave a lot of room to enter the doors of the federal courthouse.

Step one of the *Grable* test requires that the federal issue be "necessarily raised on the face of plaintiff's complaint." *Sarauer*, 966 F.3d at 674. "Necessarily raised" is a high standard. A question of federal law is necessarily raised if it is "impossible to decide" the state-law claim without deciding an issue of federal law. *Hartland Lakeside*, 756 F.3d at 1035.

To surmount the hurdles of *Grable*, "[d]eciding an issue of federal law" must be "inescapable." *Id.* "To be 'necessarily raised' for purposes of federal-question jurisdiction, the answer to the federal question must be an essential element of the state cause of action. If the case can be resolved without reaching the federal issue, the federal question is not necessarily raised." *See* 15A James W. Moore *et al.*, Moore's Federal Practice, at § 103.31(4)(g)(ii) (3d ed. 2022).

"Federal law must be dispositive of the case to give rise to federal jurisdiction." *Illinois ex rel. Elder v. U.S. Bank N.A.*, 2021 WL 4942041, at *3 (N.D. Ill. 2021). A state-law claim raises a federal issue "only if" a district court *must* resolve an issue of federal law. *See Sarauer*,

966 F.3d at 674; *see also Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812, 817–18 (N.D. Ill. 2021) ("To prevail on his claim, relator must establish those reports were false. Those reports, however, could have been false *only* if relator is correct that the property was subject to escheat in Illinois, rather than Ohio, i.e., that cashier's checks are, as relator asserts, 'similar written instruments' under 12 U.S.C. § 2503. That is something relator must establish to prevail on his claim under [state law]. A federal question is necessarily raised by relator's claims.") (emphasis in original). "A federal issue may not be necessarily raised even if the predominant issue concerns federal law." *See* Moore's Federal Practice, *supra*, § 103.31(4)(g)(ii).

Here, Progressive contends that "the MCS-90 Endorsement triggers the application of federal question jurisdiction because it calls upon this Court to determine whether the MCS-90 Endorsement applies to the collision giving rise to this lawsuit." *See* Second Supp. Jurisdictional Statement, at ¶ 7 (Dckt. No. 107). In Progressive's view, determining whether the endorsement applies to this case necessarily raises a federal question under *Grable*. *Id.* at ¶ 13.

Progressive's complaint does not necessarily raise a federal issue for at least two reasons. For starters, this Court might not need to reach the question whether the MCS-90 endorsement applies at all. As Progressive acknowledges, "[t]he MCS-90 endorsement comes into play *when the underlying insurance policy does not otherwise provide liability coverage*." *Id.* at ¶ 11 (emphasis added); *see also Carolina Cas. Ins.*, 584 F.3d at 882 (noting that "[t]he MCS-90 endorsement comes into play . . . only where . . . the underlying insurance policy to which the endorsement is attached does not otherwise provide liability coverage"); *Rothschild v. Lancer Ins. Co.*, 2016 WL 1237353, at *1 (W.D. Pa. 2016) (noting that "the endorsement is not triggered unless coverage is lacking under the liability provision of the policy") (quotation marks omitted).

9

If the underlying insurance policy does provide coverage, then the MCS-90 endorsement drops out of the picture – and so would the federal question.

The third amended complaint squarely addresses whether the underlying insurance policy provides coverage in Counts II and III. "Progressive asserts that the Progressive Policy does not provide liability coverage to Harry's because (1) the 2016 Freightliner is not an 'insured auto' as defined by the Progressive Policy and (2) the 2016 Freightliner is not a 'temporary substitute' as defined by the Progressive Policy." *See* Second Supp. Jurisdictional Statement, at ¶ 11 (Dckt. No. 107). These arguments correspond to the contract claims in Counts II and III. *See* Third Am. Cplt., at ¶¶ 40–47 (Dckt. No. 69).

Start with Count II. If the Court were to rule that the 2016 Freightliner *is* an "insured auto" under the policy, then Progressive would have a duty to defend or indemnify Harry's, all else being equal. *Id.* at ¶ 43 ("Because the 2016 Freightliner is not an insured auto, Progressive does not owe a duty to either defend or indemnify Harry's as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision . . . ."). And if the policy provides coverage to Harry's, then the Court may not need to analyze whether the MCS-90 endorsement also applies. *See Rothschild*, 2016 WL 1237353, at *1 (noting that "the court must construe the general liability provision of the policy before reaching the supplemental terms of the MCS-90B Endorsement") (cleaned up) (quoting *Atl. Cas. Ins. Co. v. United Tours, Inc.*, 2013 WL 2389887, at *4 (E.D. Va. 2013)).

Likewise, Count III is an independent basis to avoid considering the MCS-90 endorsement. If the Court were to rule that the 2016 Freightliner *is* a "temporary substitute" under the policy, then Progressive would have a duty to defend or indemnify Harry's, all else being equal. *See* Third Am. Cplt., at ¶ 47 (Dckt. No. 69) ("Because the 2016 Freightliner is not a

10

temporary substitute auto, Progressive does not owe a duty to either defend or indemnify Harry's as a result of any claims or causes of action brought by any one of the parties who sustained personal injuries or property damages as a result of the collision . . . ."). And again, if the policy provides coverage to Harry's, then the Court may not need to analyze whether the MCS-90 endorsement also applies.

The third amended complaint itself shows that other provisions of the policy might lead to coverage, without requiring the Court to take a look at the MCS-90 endorsement. The Court might not have to look at the MCS-90 endorsement at all, so the complaint does not necessarily raise a federal question. *See Rosenberg v. Advoc. Health & Hosps. Corp.*, 2011 WL 1548391, at *5 (N.D. Ill. 2011) ("Unlike *Grable* . . . Rosenberg's suit is not one in which the only contested issue is a question of federal law."). Contested issues of state law may resolve this case. The Court might resolve the coverage dispute without ever having to reach the issue of coverage under the MCS-90 endorsement.

Progressive contends that "[t]he state-law claim at issue in the instant case involves a disputed and substantial federal issue, i.e., the application of the MCS-90 Endorsement, *because the underlying insurance policy does not otherwise provide liability coverage*." *See* Second Supp. Jurisdictional Statement, at ¶ 15 (Dckt. No. 107) (emphasis added). That argument assumes that Progressive will prevail on the other claims. It might – but it might not.

Whether the underlying insurance policy otherwise provides liability coverage is likely a contested issue. Counts II and III argue that the underlying policy provisions do not apply. But if they do apply, and the Court finds coverage, then this dispute can be resolved without relying on the MCS-90 endorsement. And that means that federal law would not see the light of day.

11

Progressive's complaint does not "necessarily raise" a federal question under *Grable* for a second reason. Based on the third amended complaint's allegations, Count I turns primarily on a factual question, not on a pure question of law.

"[T]he influence of federal law on the outcome of a contract (or tort) suit is not enough to support the arising-under jurisdiction." *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007). When the state-law claim presents "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law," then the federal issue is not necessarily raised. *Id.*

A state-law claim necessarily raises a federal issue when it "present[s] a nearly pure issue of law." *McVeigh*, 547 U.S. at 700 (quotation marks omitted). A state-law claim does not necessarily raise a federal issue when it "is fact-bound and situation-specific." *Id.* at 701.

Here, the third amended complaint does not allege that the dispute over application of the MCS-90 endorsement turns on a reading of federal law. Instead, Count I alleges that the "MCS-90 Endorsement does not apply to the collision that is the subject of this lawsuit because at the time of the collision the 2016 Freightliner was not being used in interstate commerce." *See* Third Am. Cplt., at ¶ 38 (Dckt. No. 69). Basically, instead of using the Freightliner to haul stuff for Harry's, Orts was driving the semi "as a means of transporting himself from a night of socializing at the home of a friend to the local hotel where Orts slept while working for Harry's in the Chicago area." *Id.*

Whether Orts was hauling goods in interstate commerce, or instead driving himself home from a night out, is a question of fact. It does not present a pure issue of federal law. Figuring out how Orts spent his evening does not require the Court to interpret the MCS-90 endorsement. So, the third amended complaint alleges a fact-bound and situation-specific question about Ort's

purpose for driving the Freightliner when it crashed. *See McVeigh*, 547 U.S. at 701. Under *Grable*, that issue does not necessarily raise a federal issue.

Progressive argues that "most if not all federal courts that have addressed the issue have held that federal law governs the operation and effect of [the MCS-90] endorsement." *See* Second Supp. Jurisdictional Statement, at ¶ 9 (Dckt. No. 107) (collecting cases). For example, it cites *John Deere Insurance Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir. 2000), which noted that "[f]ederal law applies to the operation and effect of [Interstate Commerce Commission]-mandated endorsements," such as the MCS-90. *Id.* at ¶ 8.

Progressive basically argues that courts should apply federal law when interpreting MCS-90 endorsements. Fair enough. But the issue before the Court is not whether interpreting an MCS-90 endorsement is a question of federal law. To find subject matter jurisdiction, the federal issue needs to be *necessarily raised*. Under *Grable*, "it takes more than a federal element 'to open the arising under door.'" *McVeigh*, 547 U.S. 677, 701 (quoting *Grable*, 545 U.S. at 313); *see also Merrell Dow Pharms.*, 478 U.S. at 813 (noting that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"). Otherwise, federal question jurisdiction would exist in every state-law case involving a policy with an MCS-90 endorsement.

So, although "[f]ederal law governs the interpretation of the federally mandated terms in the MCS-90 Endorsement . . . the mere presence of a federal element is not enough" for subject matter jurisdiction. *See Rothschild*, 2016 WL 1237353, at *2 (quotation marks omitted); *see also United Specialty Ins. Co. v. SMC Transp., LLC*, 2018 WL 8804963, at *2 (S.D. Tex. 2018) (dismissing an insurance case relying on the interpretation of an MCS-90 endorsement for

13

jurisdiction because the plaintiff did "not provide any specific arguments as to why resolution of the MCS-90 endorsement issue is necessary to resolve the state law claims").

Several other courts have taken a close look at this issue, and concluded that the mere inclusion of an MCS-90 endorsement is not a sufficient basis for jurisdiction under *Grable*. *See, e.g.*, *Rothschild*, 2016 WL 1237353, at *2; *United Specialty Ins. Co.*, 2018 WL 8804963, at *3; *McCloy v. Larew*, 2013 WL 1962314, at *5 (N.D. W. Va. 2013) ("In short, recovery under the [insurance] policy and the MCS-90 is mutually exclusive. Thus, coverage under the MCS-90 is but one theory of relief pleaded by the McCloys in Count Five, and its mere presence is insufficient to raise a necessary federal question."); *Carlson v. Am. Int'l Grp., Inc.*, 2012 WL 1202193, at *10 (W.D.N.Y. 2012) ("Nevertheless, the defendants have established nothing more than the mere presence of federal issues in plaintiff Carlson's breach of contract and direct recovery claim, a 'fact-bound and situation-specific' claim that should proceed in the state forum from which it was removed out of deference to the state forum.") (citation omitted).

Progressive cites *Pacheco v. Sparta Insurance Co.*, 2017 WL 4296661 (D. Colo. 2017), but it does not lend much of a hand. *See* Second Supp. Jurisdictional Statement, at ¶ 9 (Dckt. No. 107). In *Pacheco*, the court denied a motion to remand a case where jurisdiction was based on the MCS-90 endorsement. *See Pacheco*, 2017 WL 4296661, at *1. In doing so, the court noted that "most if not all federal courts that have addressed the issue have held that federal law governs the operation and effect of [the MCS-90] endorsement." *Id.* at *3. But the court did not cite *Grable* (or similar caselaw) or describe the Supreme Court's test for determining whether a state-law claim contains an embedded federal question.

The court did note that it was "all but certain that there is no [insurance] coverage other than what might be provided by the MCS-90 endorsement." *Id.* So, the court may have decided

14

that the complaint necessarily raised a federal issue. But the court did not go on to analyze the other required elements of the *Grable* test: whether the issue was actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Gunn*, 568 U.S. at 258.

Regardless, the court determined that "[e]ven were there not federal question jurisdiction . . . there [was] diversity of citizenship jurisdiction." *Pacheco*, 2017 WL 4296661, at *3. So, the court did not need to hang its hat on its analysis of federal question jurisdiction. Diversity jurisdiction was enough for the case to stay in federal court.

That's not the situation in the case at hand. Federal question jurisdiction is the only potential basis for subject matter jurisdiction. There is no other jurisdictional leg to stand on. The third amended complaint no longer contains allegations supporting diversity jurisdiction. *See* Third Am. Cplt., at ¶ 2 (Dckt. No. 69); Supp. Jurisdictional Statement, at ¶ 3 (Dckt. No. 98). And for the reasons stated above, *Pacheco*'s analysis of federal question jurisdiction is not enough to cross the jurisdictional goal line.

In sum, the Court finds that Progressive's third amended complaint does not present a federal question. This Court therefore lacks subject matter jurisdiction.

## Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's complaint for lack of subject matter jurisdiction. By definition, the dismissal is without prejudice.

Date: August 23, 2023

Steven C. Seeger
United States District Judge

15